UNITED STATES, Appellee

v

RALPH T. McFARLANE, Private E-2, U.S. Army, Appellant

8 USCMA 96, 23 CMR 320

No. 9689

Decided June 28, 1957

*Major Edward Fenig* argued the cause for Appellant, Accused.

*First Lieutenant James G. Duffy* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

### I

This is a mandatory review pursuant to Article 67(b)(1) of the Uniform Code of Military Justice, 10 USC § 867, since the accused is presently faced with a death sentence. The facts surrounding the substantive offenses are immaterial for the reason that the error infesting the findings and sentence grows out of the tactics employed by

trial defense counsel. He adopted a method of defense which we conclude denied the accused the sort of fair trial envisaged by the Uniform Code of Military Justice.

Preliminarily, we might say that the records we have reviewed in capital cases convince us that ▆▆▆▆ ■ Army commanders are obsessed with the idea that speed is a necessity when an American soldier has committed an offense which carries a death penalty. Particularly is that attitude demonstrated by some overseas commands. No doubt the proper administration of justice demands that punishment be reasonably fast and swift; but in capital cases, opportunities to fully explore, prepare, and present possible defenses should not be denied to an accused or his counsel merely because the victim is a foreign national. A death sentence requires that the record be reviewed by all appellate agencies and affirmed by the President. All that takes time and the extra days required to permit adequate preparation may result in a shortening of time between trial and final action. Certainly all subsequent reviewing persons and courts would have less compunction about affirming a sentence of death if they were assured that full opportunity had been accorded the accused to prepare his defense.

These offenses were committed on Sunday, June 10, 1956, at Wertheim, Germany, and a preliminary hearing was held four days thereafter. The pretrial hearing officer recommended a psychiatric examination because of a belief that the accused was suffering from lapses of memory. The extent of the examination is not disclosed, for the usual board of officers' report is not found in the record. However, there is a certificate executed by a neuropsychiatrist, which indicated his opinion was based merely on a personal interview. He recommended the accused be transferred to a general hospital with facilities for the psychological testing. There is attached an affidavit subsequently filed by trial defense counsel from which it appears that some sort of psychological test was given the following day. Certainly if those two documents reflect the complete examination given this accused, they leave much to be desired for there is no information contained in them that in any way touches on accused's mental capacity to form a specific intent. True it is they show legal sanity, but other areas are untouched. We mention these reports, not because they are evidence but because they might have furnished defense counsel with some possible avenues to the development of lesser included offenses. The trial commenced on June 28, 1956, was completed on the following day, and while trial defense counsel avers that he was given ample time in which to prepare for the defense of this case, we will hereinafter point out why we believe he was mistaken.

At the time of the trial, the accused stood charged with two offenses. In the first charge and specification, it was alleged that, while perpetrating robbery, he murdered the victim by stabbing him with a knife. In the second charge and specification, he was charged with assault with intent to commit murder by stabbing a second victim with a knife. Faced with these charges, trial defense counsel concluded to adopt the following trial tactics. At the time of arraignment, he permitted the accused to enter a plea of guilty to the charge of assault with intent to commit murder.

A plea of not guilty was then entered as to the murder offense. The law officer instructed the accused on the effect of his guilty plea to the one specification involving the assault and made certain it was understood by the accused. Defense counsel then made the following statement:

> "I would like the court to understand that under the provisions of Article 45b of the code, the accused is precluded from pleading guilty to Charge 1 and the specification,"

to which the law officer responded:

> "The court is so instructed."

After the prosecution made a short opening statement, the taking of testimony commenced. As this progressed, it became all too apparent that defense counsel had conceded guilt, for he permitted the Government to put on its case

with little interference or interruption. He added the coup de grace by joining trial counsel in waiving arguments. After the finding of guilty was returned, the defense came forward with what is generously designated as evidence in extenuation and mitigation. Two officers for whom the accused had served approximately four months testified that he needed close supervision but was conscientious; that his character rating was excellent; and that he had not been the subject of disciplinary measures aside from being twice punished under Article 15. Defense counsel then gave a brief unsworn statement for the accused.

## II

Undoubtedly defending counsel should be afforded the fullest opportunity to plan and develop the tactics ■■■■■■ ■ they will employ in their defense of one accused of a criminal offense. However, they cannot close their eyes to reality and adopt a method which clashes head-on with a mandate of the Uniform Code of Military Justice. Here defending counsel did just that, and it is for this reason that his over-all plan of defense requires a reversal of this conviction. Article 45(b) of the Code, 10 USC § 845, provides:

"A plea of guilty by the accused may not be received to any charge or specification alleging an offense for which the death penalty may be adjudged."

Viewed from any reasonable vantage point, the means employed by counsel in this case were a direct violation of that Article. True it is the record reflects the words not guilty were uttered by the accused, but in the record we can figuratively see defense counsel shaking his head and saying, "no, it isn't so." This just happens to be one of those occasions where the old rule that actions speak louder than words can be applied appropriately. After entering a plea of guilty to assault with intent to commit murder, any presumption of innocence on the murder charge was destroyed effectively by counsel having the court instructed that it was illegal to enter a similar plea to a capital offense. A fair implication of that maneuver was to impress the court with the fact that had there not been a statutory prohibition, the accused would have judicially confessed to the crime and thrown himself on the mercy of the court. There would be no purpose served by the Code in its prohibition of a guilty plea if defense counsel could patently convey to courts-martial his belief that his client was guilty and that a contrary plea was entered solely because a guilty person could not judicially admit his guilt. Clearly, defense counsel expended no efforts in the case before findings and, while it may be that he had no defense, his court conduct, behavior, and manner of dealing with his client's life and liberty should not be a signal that he has defaulted on the merits because his client is in fact guilty.

Trial defense counsel has filed an affidavit on appeal in which he seeks to explain the tactical advantage favoring his method of procedure. We need not consider this affidavit, for the record itself speaks boldly on that subject and shows clearly that his only defensive plan extended no further than an effort to escape the death penalty. Undoubtedly those were the tactics which he thought could best be employed but, aside from their partial invalidity in a capital case, they are rendered worthless because he had nothing of consequence to present in extenuation or mitigation. As we read the record, there is no evidentiary item presented which would cause the court to ponder on the death penalty unless it could be that within a four-months' period of time the accused had no previous convictions. Weak as that testimony is, its admission is commendable, but introduced also was a damaging admission that the accused needed money. We can hardly justify exchanging a concession of guilt of murder for that meager testimony.

We have previously stated that defense counsel was mistaken in his belief that he had sufficient time ■■■■■■ ■ to prepare his defense. Of course, he had time for what he presented, but if he intended to rely solely on extenuating and mitigating circumstances, some attempts should have been made to obtain evidence of

accused's early life, any deficiencies, mental or otherwise, and his previous pattern of behavior. We are dealing with an eighteen-year-old boy, and some evidence from lay witnesses on his past life, his lapses of memory, dullness of thought, mental derangement, or childhood indicia of mental disorders might have been obtained by corresponding with his relatives or people of the community in which he was reared. Furthermore, some further investigation should have been made of ■ the mental condition called to the attention of defense counsel by the investigating officer. Certainly we can find no justification for tossing away the remotest possibility of reducing the crime from felony murder to a lesser offense without some showing that the medical experts had made a thorough mental examination of the accused to ascertain his mental capacity to form the specific intent to steal or the intent to murder as required by the assault charge. Especially when a life is at stake, great care should be exercised by counsel to the end that every probable line of defense is fully explored. When a crime is committed overseas and **Headnote 5** possible avenues of defense extend to this country, ten days time is inadequate to prepare the defense of a capital case.

In summation, when this record is considered by its four corners, the conclusion is inescapable that, for all practical purposes, this accused pleaded guilty to a capital offense. That is impermissible under the Code, and we cannot affirm a conviction which is supported by a theory of defense which is prohibited by law, regardless of how honest and sincere defense counsel may have been in conceding everything but the death sentence.

The decision of the board of review is reversed and a rehearing on both specifications is granted.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring):

Although the principal opinion amply justifies the conclusion that the accused was deprived of the effective assistance of counsel, I think a few other comments are appropriate. At the trial, defense counsel demonstrated that he believed that the court was ordered to convene at Wertheim, the scene of the offense, instead of at Frankfurt, its regular place of meeting, "for one reason alone, and that·is in the hope that this case would have a tremendous impact .upon you gentlemen as members of the court." Such a belief would seem to impel a motion for a change of venue (see United States v Gravitt, 5 USCMA 249, 17 CMR 249), but no such motion was ever presented. Also, the preliminary psychiatric report on the accused's mental condition recommends that he be transferred to a general hospital for psychological testing "to complete the psychiatric evaluation." Apparently, no attention was paid to the recommendation. Here again, counsel who was attentive to the grave responsibility of defending a capital case would have moved for appropriate relief in order to obtain a full report on the accused's mental condition before going to trial. In short, the situation in this case is the reverse of that in United States v Bennett, 7 USCMA 97, 21 CMR 223; defense counsel here conceded everything, explored nothing, was unprepared on every issue, and made the least of what he had.