UNITED STATES, Appellee,

v.

Michael W. FRICKE, Lieutenant Commander, U.S. Navy, Appellant.

No. 98–0783.
Crim.App. No. 96–1293.

U.S. Court of Appeals for the Armed Forces.

Argued Dec. 10, 1999.

Decided July 5, 2000.

SULLIVAN, J., delivered the opinion of the Court, in which EFFRON, J., and EVERETT, S.J., joined. CRAWFORD, C.J., and GIERKE, J., each filed an opinion concurring in part and dissenting in part.

For Appellant: *Alison Ruttenberg* (argued); *Major Dale Anderson,* USMC (on brief).

For Appellee: *Lieutenant Janice K. O'Grady,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Commander Eugene E. Irvin,* USN (on brief).

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried at the Naval Legal Service Office, Norfolk, Virginia, by a general court-martial composed of a military judge sitting alone. Pursuant to his pleas, he was found guilty of premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. On August 30, 1994, appellant was sentenced to a dismissal, confinement for life, total forfeitures, a fine of $100,000, and an additional 2 years' confinement if the fine was not paid. On June 11, 1996, the convening authority approved the sentence as adjudged, except, pursuant to a pretrial agreement, he suspended confinement exceeding 30 years and all forfeitures and fines for a period of 10 years. The Court of Criminal Appeals affirmed the findings and sentence on March 10, 1998. 48 MJ 547.

On June 4, 1999, we granted review of the following issues:

I. WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN FINDING THAT APPELLANT IS NOT ENTITLED TO ADDITIONAL ADMINISTRATIVE TIME CREDIT FOR HAVING BEEN ILLEGALLY CONFINED PRIOR TO TRIAL, AND ADDITIONAL ADMINISTRATIVE TIME CREDIT FOR HAVING BEEN SUBJECTED TO UNLAWFUL PRETRIAL PUNISHMENT IN VIOLATION OF ARTICLES 13 AND 55, UCMJ, 10 U.S.C. §§ 813 and 855.

II. WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN FINDING THAT APPELLANT'S GUILTY PLEA IS NOT VOID IN VIOLATION OF ARTICLE 45, UCMJ, 10 U.S.C. § 845, IN THAT APPELLANT PLEADED GUILTY TO A CAPITAL OFFENSE AND THE GENERAL COURT–MARTIAL OF THE KIND SPECIFIED IN 10 USC SECTION 816(1)(B) WAS WITHOUT JURISDICTION TO CONVICT APPELLANT BASED UPON THIS IMPROVIDENT PLEA.

We hold against appellant on Issue II. On Issue I, we remand appellant's case for a *DuBay*[1] hearing on his post-trial claim of unlawful punishment prior to trial. Article 13, UCMJ, 10 USC § 813; *see United States v. Ginn,* 47 MJ 236 (1997); *cf. United States v. Combs,* 47 MJ 330 (1997); *see generally McMillian v. Johnson,* 88 F.3d 1554, 1564–65 (11th Cir.1996).

(A)

Facts

Appellant was a 38–year old Lieutenant Commander with 17 years of naval service at the time of the offense, and he was assigned to NAS Oceana, Virginia Beach, Virginia. About sunset on the evening of May 13, 1988, appellant's 31–year–old wife, Roxanne, was shot and killed as she entered her vehicle after shopping at a Farm Fresh supermarket in Virginia Beach. An assailant approached her car, stole her purse, and shot her twice with a handgun. The crime remained unsolved until October 1993, at which time appellant was arrested.

Lamar Brunson, who had served in the Navy with appellant, informed the Norfolk police that appellant had hired a hit man to kill his wife. The hit man was paid $5,000 shortly after the murder and had been promised a total of $25,000. Appellant paid him an additional $8,000 sometime later. Shortly before his wife's death, appellant had secured

1. *United States v. DuBay,* 17 USCMA 147, 37 CMR 411, 1967 WL 4276 (1967).

a $100,000 term life insurance policy on his wife's life. She already had an existing life insurance policy payable in the amount of $25,000. Appellant was the beneficiary on both policies.

Appellant was kept in pretrial confinement for 326 days. He alleges that during this period, he was housed in a 6–feet by 8–feet call within the Disciplinary Segregation Unit. According to an affidavit which appellant submitted with his post-trial submissions, he was kept there 23 hours a day, was fed in his cell, and was not allowed to talk to other prisoners. He claims he was required to sit at a small school-like desk from 4:30 a.m. to 10:00 p.m. each day. He was not allowed to sit or lie on his bunk or to sleep. He was only allowed to read the Bible or some other Christian literature.

Appellant initially entered a plea of not guilty to a premeditated murder charge but changed his plea to guilty after the conclusion of the Government's case. At that time, he secured a pretrial agreement from the convening authority. As part of the agreement, the convening authority promised to withdraw the previous capital referral if appellant successfully completed his providence inquiry to the charged offense. The following exchange between the military judge and trial counsel took place before appellant's plea was entered:

MJ: At this time, trial counsel, you have an announcement to make regarding the pretrial agreement and the capital referral?

TC: Yes, sir. Sir, *I've been authorized by the convening authority that this General Court–Martial's now been referred noncapital.* That referral decision is conditioned upon your acceptance of a plea of guilty from the accused to the Charge and Specification, as well as the pretrial agreement in this case.

MJ: Very well. Commander Fricke, because *the Government has withdrawn the capital referral at this time,* that gives you a different option regarding forum election. . . .

(R. at 1392).

After appellant entered his guilty plea, the following colloquy occurred:

MJ: And, defense counsel, what advice have you given the accused as to the maximum punishment for the offense of which he's offered to plead guilty?

IMC: Sir, I've advised Lieutenant Commander Fricke that the maximum punishment authorized in this case is: *Confinement for life;* forfeiture of all pay and allowances; a fine; loss of all lineal numbers and seniority; and dismissal from the naval service.

MJ: Commander Fricke, you have been correctly advised of the maximum punishment. On your plea of guilty alone, you could receive:

A dismissal;

*Confinement for life;*

Total forfeiture of all pay and allowances;

A fine; and

Loss of all numbers, seniority or lineal position in the Navy.

MJ: Do you understand that?

ACCUSED: Yes, sir.

(R. at 1395) (emphasis added).

After his trial, appellant submitted two affidavits to the appellate court below and made a claim for sentence credit based on illegal pretrial punishments. One was his affidavit, and the other was that of Major Bart Larsen, who was housed in the same facility as appellant during appellant's confinement, but as a sentenced prisoner. Appellant alleged, and Major Larsen corroborated, various conditions endured by appellant during his pretrial confinement and that they were told these conditions were imposed in an effort on the part of Brig authorities to produce a confession from appellant.

The Government, in response to appellant's claims of illegal pretrial confinement and unlawful pretrial punishment, submitted an affidavit of the Director of Corrections at the Norfolk Naval Brig to the court below. Based solely on these three affidavits, the court below rejected appellant's claims, relying on this Court's decision in *United States v. Ginn,* 47 MJ 236 (1997). It asserted that "[m]ost of the 'facts alleged in [appellant's

affidavits] ... would not result in relief even if any factual dispute were resolved in appellant's favor[.]'" It also said, "Under these circumstances [two affidavits from appellant 3 years apart] 'the appellate filings and the record as a whole "compellingly demonstrate" the improbability' of the remainder of appellant's affidavits." *United States v. Fricke*, 48 MJ at 550, quoting *United States v. Ginn*, 47 MJ at 248. Judge Leo dissented, reasoning that "there is no basis in the appellate filings or the record as a whole to support the majority's finding that the improbability of appellant's factual assertions has been 'compellingly demonstrated' on this claim of pretrial punishment." *Id.* at 551.

Appellant's affidavit, as noted above, recounted his belief as to why he was subjected to these "horrific and onerous conditions" of pretrial confinement. He stated in his affidavit of June 1995:

> *The Government's intent was clear and summed up by Senior Chief Jacobs, the senior counselor assigned to the Naval Brig and the counselor assigned to me during my confinement there. Senior Chief Jacobs told me on a number of occasions that the Government would keep me "locked down until they broke" me.* His comments to me are documented in the enclosed statement of Major Bart Larsen, an Air Force Officer who was confined a portion of the time in the Brig while I was there. The Senior Chief was completing his second, three-year tour of duty at the Naval Brig and was completing his Bachelors Degree in Criminology. He was no rookie to the manner in which the Government operates and spoke from extensive experience and training.

\* \* \*

> As previously mentioned, the Government's intent of the manner in which I was confined was aptly stated by Senior Chief Jacobs, the senior counselor at the Brig. *He stated on many occasions it was common for the military to keep a pre-trial inmate locked down in order to break them and get them to confess.*

(Emphasis added.)

Appellant also submitted an affidavit dated April 1995 from another prisoner, Major Bart Larsen. He described the conditions of confinement similar to appellant's affidavit and he further stated:

> We were housed in adjacent cells even though I was an adjudged prisoner and LCDR Fricke was in pretrial confinement. We had the same counselor, Senior Chief Jacobs, the senior counselor at the Brig, who often talked to us together. Senior Chief Jacobs was on his second, three-year tour of duty at the Norfolk Naval Brig. *On several occasions I heard him state that many times the military would hold personnel in arduous pretrial confinement for a long period of time to "break them" into confessing. He also said that LCDR Fricke "held the brig record for being in the block longer than any previous prisoner."*

(Emphasis added.)

The Government, in response, submitted an affidavit from the prison administrator of the Naval Brig where appellant was held in pretrial confinement. It stated:

> 1. My name is Ronnie C. Askew. I am the Director of Corrections at Naval Brig, Norfolk, Virginia. I have been assigned at this facility since April 1980 and was serving in this position during the pretrial confinement of LCDR Fricke [sic] have personal knowledge of the conditions of his confinement. The following statements are based upon current memory.

> 2. *All individuals* confined are first assigned to a one person cell measuring approximately 6 feet wide, 8 feet deep, and 10 feet high for a period of observation and custody and security classification. *They are not required to stay in this cell at all times and are removed to visit their counselor, use the phone, purchase health and comfort items, go to the barber shop and medical if needed.* Due to the requirement to house officers separate to the extent possible from enlisted prisoners, LCDR Fricke was assigned to either cell block A or B during his confinement period. During the time frame that LCDR Fricke was confined at this facility, officers

were housed in the cell block area in order to maintain separation from enlisted prisoners. All cells at this facility are designed the same, no cell or cell block is designated a specific status. The difference between special quarters and disciplinary segregation is based on what items the prisoner is allowed to have in his cell. Disciplinary segregation also results in the loss of all privileges. *LCDR Fricke was never placed in disciplinary segregation and was afforded all privileges possible.* In order for officer prisoners to participate in programs with enlisted members the officer is required to submit a request in writing and state that he waives his right of separation from enlisted. To my knowledge, LCDR Fricke never made such a request nor did he waive his right of separation. I have attached copies of the daily routine for officers as contained in NAVBRIGNORVAINST 5000.1B (revised Oct 96 but in effect during LCDR Fricke's confinement period), if LCDR Fricke did not watch TV or read other than the Bible, it must have been by personal choice.

3. In regards to the use of restraining devices, LCDR Fricke was not escorted outside the Brig compound by Brig staff. The use of restraints would have been a decision of the Naval Base Police Department who provided escorts.

4. In order to prevent injury to the prisoner or others, chief petty officer and officer prisoners are not allowed to wear ribbons or collar devices at any time inside the Brig.

(Emphasis added.)

— — —

(B)

Validity of Guilty Plea

(Granted Issue II)

■ The first issue we will address in this case is Assigned Issue II. Appellant asks that we set aside his guilty plea to premeditated murder and his noncapital sentence for two reasons. First, he asserts that his plea of guilty in a case referred as capital was "void" under Article 45(b), UCMJ, 10 USC § 845(b).[2] Second, he asserts that the military judge had no jurisdiction to accept a plea of guilty to this offense in a case referred as capital. Article 18, UCMJ, 10 USC § 818.[3] We disagree.

The factual premise of appellant's argument is that his case was referred capital at the time his plea of guilty to premeditated murder was proferred and accepted by the military judge. In his final brief, he recognizes that the convening authority had agreed to withdraw the case as capital, if his plea of guilty was accepted by the military judge. Moreover, he recognizes that the military judge did indeed accept his guilty plea. Nevertheless, he asserts:

However, there is nothing in the record to show that the convening authority actually withdrew the referral as a capital case and re-referred it as a noncapital case. In the absence in the record of any paperwork by the convening authority referring the case as noncapital, the case remained a capital case throughout all the proceedings, including the guilty plea and sentencing phases. Therefore, at all times during the trial until sentence was announced, the appellant faced the death penalty, and in fact, a death qualified panel remained on standby to try him for his life until the start of the pre-sentencing hearing.

Final Brief at 34–35.

We are not persuaded by appellant's statutory arguments for several reasons. First, he has cited no controlling authority for his assertion that "paperwork by the convening authority referring the case as noncapital"

2. Article 45, Uniform Code of Military Justice, states:
(b) A plea of guilty by the accused may not be received to any charge or specification alleging an offense for which the death penalty may be adjudged.

3. Article 18, UCMJ, states:

... However, a general court-martial of the kind specified in section 816(1)(B) of this title (Article 16(1)(B)) shall not have jurisdiction to try any person for any offense for which the death penalty may be adjudged unless the case has been previously referred to trial as a noncapital case.

was required. *See United States v. King,* 28 MJ 397, 399 (CMA 1989); RCM 601(e)(1), Discussion, Manual for Courts–Martial, United States (1994 ed.) (nonbinding comments of drafters of Manual generally suggesting "[a]ny special instructions must be stated in the referral indorsement"); *cf.* RCM 103(2) (no express requirement that noncapital referral be stated in instruction that is written). Second, his argument ignores the fact that the military judge, without objection by the parties in this case, acknowledged the noncapital referral of his case on the record prior to the acceptance of his guilty plea. (R. 1392). *See United States v. Clark,* 35 MJ 432, 433 n. 1 (CMA 1992); *cf. United States v. McFarlane,* 8 USCMA 96, 23 CMR 320, 1957 WL 4490 (1957). Finally, the failure to reduce the re-referral to writing (not the re-referral itself) was technical in nature and did not deprive appellant of the essential protections of the above-noted statutes. *See United States v. Stinson,* 34 MJ 233, 238 (CMA 1992), citing *United States v. Gebhart,* 34 MJ 189 (CMA 1992), and *United States v. Jette,* 25 MJ 16 (CMA 1987). Clearly, our case law has recognized that common sense must prevail in these circumstances. *See United States v. Yates,* 28 MJ 60, 63 (CMA 1989). Therefore, appellant loses on Issue II.

### (C)

### Pretrial Punishment

### (Granted Issue I)

The other issue raised in this case concerns appellant's post-trial claim that he was unlawfully placed in pretrial confinement and unlawfully punished while in that status. His initial contention is that, in light of his exemplary service performance, he should not have been confined solely on the basis of an allegation of a 5–year–old murder. *See* RCM 305(h)(2)(B)(iii).[4] His second contention is

that prison authorities improperly subjected him to excessively arduous and inhumane conditions of pretrial confinement, not placed on other pretrial confinees, in order to coerce or break him into confessing. He requests "credit of five-for-one days for the 326 days that he spent in pretrial confinement." Final Brief at 13.

Article 13, UCMJ, 10 USC § 813, provides:

**§ 813. Art. 13. Punishment prohibited before trial**

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

Absent affirmative waiver of this issue at trial, we have considered claims under this codal provision raised for the first time on appeal. *United States v. Huffman,* 40 MJ 225, 227 (CMA 1994); *see United States v. Combs,* 47 MJ 330, 333 (1997).[5]

In *United States v. McCarthy,* 47 MJ 162, 165 (1997), this Court recognized that Article 13, UCMJ, prohibits both the purposeful imposition of punishment on a military accused prior to court-martial and pretrial confinement conditions which are more rigorous than the circumstances required to ensure an accused's presence. Moreover, this Court also recognized in *United States v. Miller,* 46 MJ 248, 250 (1997), that the purposeful denial of the constitutional rights of a servicemember while in pretrial confinement might constitute illegal pretrial punishment permitting sentence credit. Finally, we have held that the failure to object to a military magistrate or chain of command is strong evidence that unlawful pretrial punishment did not occur.[6] *See United States v. Huffman, supra* at 227.

---

**4.** We find no merit to this claim. *See generally United States v. Gaither,* 45 MJ 349, 352 (1996) (abuse-of-discretion standard).

**5.** In view of appellant's unrebutted assertion that no motion for sentence credit based on unlawful pretrial punishment was made at his trial on advice of defense counsel that it could be raised

on appeal, we do not find a knowing and intelligent waiver of this issue. *See United States v. Combs,* 47 MJ 330, 333–34 (1997).

**6.** Appellant's affidavit dated June 1995 clearly indicates that he repeatedly protested his treatment to Senior Chief Jacobs, the senior counselor at the Brig.

■ Our first inquiry under these principles is whether appellant has raised a legal claim which, if true, would entitle him to relief. *See United States v. Ginn,* 47 MJ at 244. He avers, *inter alia,* that for 326 days he was locked in his cell, 23 hours per day, 15 ½ of which he was required to sit at a small wooden desk or stand nearby if he fell asleep at the desk. A majority of the court below held that the facts alleged in appellant's affidavits would not result in relief or were compellingly demonstrated to be improbable. 48 MJ at 550. We disagree.

■ The conditions alleged above are not *"de minimis"* impositions on a pretrial detainee for which the law is not concerned. *See Bell v. Wolfish,* 441 U.S. 520, 539 n. 21, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), quoting *Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *see also McClanahan v. City of Moberly,* 35 F.Supp.2d 744, 745–46 (E.D.Mo.1998) (and cases cited therein). Instead, they are "genuine privations and hardship over an extended period of time," which "might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." *Bell v. Wolfish,* 441 U.S. at 542, 99 S.Ct. 1861; *see also Duran v. Elrod,* 760 F.2d 756, 759 (7th Cir.1985); *Pippins v. Adams County Jail,* 851 F.Supp. 1228, 1232 (C.D.Ill.1994). In fact, as pointed out by the dissenting judge below, conditions similar to appellant's alleged pretrial confinement have previously been considered "far more onerous than would be required to assure [appellant's] presence." 47 MJ at 551 (Leo, J., dissenting), quoting *United States v. Palmiter,* 20 MJ 90, 99 (Everett, C.J., concurring in the result). Finally, appellant's particular allegations, corroborated by a second prisoner with direct knowledge of the conditions of his confinement, were opposed by post-trial assertions of a prison administrator as to general prison practices. *Cf. United States v. Combs, supra* (essentially unrebutted case).

In addition, coercing a confession is not a legitimate governmental objective. *See Culombe v. Connecticut,* 367 U.S. 568, 584, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) ("neither the body nor mind of an accused may be twisted until he breaks") (opinion of Frankfurter, J.); *Bell v. Wolfish,* 441 U.S. at 539, 99 S.Ct. 1861 (noting that "if a restriction or condition is not reasonably related to a legitimate [government] goal ... a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua detainees"); see generally Block v. Rutherford,* 468 U.S. 576, 583–84, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). Here, appellant submitted a post-trial affidavit that the confinement authorities' intent in imposing a continuous lockdown on him as a pretrial detainee was to coerce his confession in violation of his constitutional rights. *See Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). The prison official's affidavit does not particularly deny this charge but at least impliedly disputes such an intent on the part of prison authorities. *Cf. Rapier v. Harris,* 172 F.3d 999, 1002–03 (7th Cir.1999) (placing pretrial detainee in solitary confinement for 270 days expressly based on objective of maintaining safety of other inmates and jail personnel found to be legitimate government purpose). In these circumstances, a factual decision on the intent of the detention officials is also necessary to decide whether appellant was subjected to illegal pretrial punishment. *See United States v. Ginn, supra* at 245.

The appropriate resolution of this unlawful pretrial punishment claim is to remand this case for a *DuBay* hearing. *Id.; see McMillian v. Johnson,* 88 F.3d at 1564–65. There, the record can be fully developed as to the conditions actually imposed on appellant during his pretrial confinement and the intent of detention officials in imposing those conditions. *See United States v. Fricke,* 48 MJ at 550–51 (Leo, J., dissenting); *Ginn,* 47 MJ 236; *Huffman,* 40 MJ 225; *see also Bell v. Wolfish,* 441 U.S. at 537–39, 99 S.Ct. 1861 (for test to determine whether pretrial confinement constitutes unconstitutional punishment).

## (D)

### Conclusion

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is

affirmed as to findings but set aside as to sentence. The record of trial is returned to the Judge Advocate General of the Navy for further proceedings in accordance with this opinion and *United States v. DuBay*, 17 USCMA 147, 37 CMR 411, 1967 WL 4276 (1967). After such proceedings are concluded, the record of trial, along with the military judge's findings of fact and conclusions of law, will be returned to the Court of Criminal Appeals for further review under Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c)(1994). Thereafter, Article 67(a), UCMJ, 10 USC § 867(a)(1994), will apply.

CRAWFORD, Chief Judge (concurring in part and dissenting in part):

I agree with the Court's disposition of Issue II. As to Issue I, consistent with my views in *United States v. Huffman*, 40 MJ 225, 228 (CMA 1994)(Crawford, J., dissenting in part and concurring in the result), and *United States v. Combs*, 47 MJ 330, 334 (1997)(Crawford, J., dissenting), I would hold that appellant has waived his claim concerning unlawful pretrial punishment by failing to raise the matter before either the magistrate or the military judge.

Even though I would dispose of Issue I by applying waiver, I find that appellant's failure to complain is "strong evidence" that he was not punished in violation of Article 13. *Huffman, supra* at 227; *see United States v. James*, 28 MJ 214 (CMA 1989); *United States v. Palmiter*, 20 MJ 90, 97 (CMA 1985).

Appellant spent 326 days in pretrial confinement. He complained for the first time in June 1995, nearly 1 year after his court-martial, that he was required to sit at a small wooden desk within his 6–by–8–foot cell for 15½ hours per day, or stand "for hours" should he fall asleep at that desk. He was not allowed to talk with other prisoners. He was only permitted to read the Bible or Christian literature by the light of one 40–watt light bulb, but was prohibited from attending church services and Bible studies. He was denied the amenities of sentenced prisoners: access to recreational facilities and equipment; newspapers; television; radio; assistance organizations; and rehabilitation programs.

The majority is correct by concluding that if these allegations are true, appellant would be entitled to relief. However, unlike the majority, I find that the record, logic, and common sense together "compellingly demonstrate" the improbability of the facts alleged by appellant. *Cf. United States v. Ginn*, 47 MJ 236, 248 (1997).

First, appellant was a 38–year–old Lieutenant Commander who extensively litigated the necessity for his pretrial confinement. Yet, if one is to believe him, appellant failed to mention these "horrific and onerous" pretrial conditions either to the magistrate or the military judge. Second, the conditions which appellant claims he had to endure are strikingly similar to those found to have existed at the Charleston Navy Brig, and which we found to be a violation of Article 13, in *United States v. Palmiter, supra.* Either the Department of the Navy has decided to flout the authority of this Court and reinstate pretrial confinement conditions that we condemned, or appellant's recitation of his pretrial confinement conditions is other than reality. I suggest the latter. Accordingly, I would affirm the Court of Criminal Appeals decision.

GIERKE, Judge (concurring in part and dissenting in part):

I agree with the majority's resolution of Issue II. In my view, Issue I was waived. *United States v. Huffman*, 40 MJ 225, 228–29 (CMA 1994).

This is one more case demonstrating the wisdom of the waiver rule in RCM 905(e). Appellant is not an inexperienced sailor. As the majority notes, at the time of the alleged offenses in 1988, he was 38–year–old commissioned officer with 17 years of service. By the time he was tried in 1994, he was in his 40s and retirement eligible. He did not find his conditions of pretrial confinement sufficiently onerous to challenge them at trial. In my view, the result of the majority opinion is to allow sandbagging by this appellant, and to leave the court below with a Hobson's

choice of investigating a stale, 6–year–old allegation or giving appellant a windfall.

As a final note, I believe that Article 13 issues in future guilty-plea cases could be resolved easily in a manner consistent with both the majority and minority opinions in *Huffman*, if military judges would conclude their plea inquiry with a question whether there is any claim of unlawful pretrial punishment.