IN THE CASE OF


UNITED STATES, Appellee

v.


Edgar E. CORTEGUERA, JR., Airman
U.S. Air Force, Appellant


No. 01-0421


Crim. App. No. 33067

United States Court of Appeals for the Armed Forces

Argued October 24, 2001

Decided February 26, 2002

SULLIVAN, S.J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and GIERKE, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain Jennifer K. Martwick (argued); Lieutenant
Colonel Beverly B. Knott, Lieutenant Colonel Timothy W.
Murphy, and Major Maria A. Fried (on brief); Colonel James R.
Wise and Major Stephen P. Kelly.


For Appellee:  Captain Matthew J. Mulbarger (argued); Colonel
Anthony P. Dattilo and Major Lance B. Sigmon (on brief);
Major Linette I. Romer.


Military Judge:  Amy M. Bechtold


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Senior Judge SULLIVAN delivered the opinion of the Court.

On August 21, 1997, appellant was tried by a general court-martial composed of a military judge sitting alone at Lackland Air Force Base, Texas.  In accordance with his pleas, he was found guilty of larceny, wrongful disposition of government property, making a false official statement, obtaining services under false pretenses (three specifications), wrongful possession of a false dependent identification card, and dishonorable failure to maintain funds in his checking account (two specifications), in violation of Articles 121, 108, 107, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 908, 907, and 934, respectively.  The military judge sentenced him to a dishonorable discharge, confinement for four years, total forfeitures, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged on January 13, 1998, and the Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.  (No. 33067, January 23, 2001.)

On July 10, 2001, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN
> DENYING DEFENSE COUNSEL'S MOTION FOR
> ADDITIONAL CONFINEMENT CREDIT FOR
> UNDERGOING PRETRIAL PUNISHMENT IN
> VIOLATION OF ARTICLE 13, UCMJ.

We hold that the military judge did not err when she denied appellant additional pretrial confinement credit for the treatment he received as a pretrial detainee.  See generally

United States v. Corteguera, Jr., 01-0421/AF

United States v. Fricke, 53 MJ 149, 155 (2000)(holding that "'de minimis' impositions on a pretrial detainee" do not require credit under Article 13, UCMJ, 10 USC § 813); see generally McClanahan v. City of Moberly, 35 F.Supp.2d 744, 745-46 (E.D. Mo.), aff'd, 68 F.3d 494 (8th Cir. 1998).

The military judge in this case made detailed written findings and denied appellant's motion for additional sentence credit for unlawful pretrial punishment under Article 13, UCMJ. In pertinent part, she said:

> **BACKGROUND:** In the above-captioned general court-martial tried on 21 August 1997, at Lackland Air Force Base, Texas, the defense made a motion requesting administrative confinement credit pursuant to United States v. Allen, 17 MJ 126 (CMA 1984), for time spent in pretrial confinement and additional administrative confinement credit for pretrial punishment in violation of Article 13, UCMJ. Appellate Exhibit IV. The government provided a written response. Appellate Exhibit IV. An evidentiary hearing was held on the motion. (R. 119-208). The court awarded 57 days Allen credit for time spent in pretrial confinement and denied the motion requesting additional credit indicating it would attach essential findings. (R. 227) These are those essential findings.
>
> **ESSENTIAL FINDINGS:**
>
> a. Pretrial Confinement: The accused was ordered into pretrial confinement at Lackland AFB on 25 June 1997 by his commander, Capt Brauer. The accused remained continuously confined until his trial on 21 August 1997, a total of 57 days.

b. <u>Conditions in Pretrial Confinement</u>:

1. <u>Upon inprocessing into pretrial confinement, the accused was required to master the rules of the facility before continuing through inprocessing. Initially the accused demonstrated a nonchalant attitude and failed to get the facility rules right. As a result, he was required to run to several of the windows of the facility announcing that he was an inmate and he was there (at the window) because he couldn't get it (the rules) right</u>. This practice has since been discontinued by confinement personnel as being ineffective. <u>Also while inprocessing, the accused was told to sing the Air Force song. When he stated he didn't know it, he was given the option of singing his favorite song. He did sing his favorite song for approximately a minute. The stated reason for this practice was to loosen up a new confinee who is under the stress of inprocessing</u>. Finally, while being inprocessed, a confinement NCO showed the accused shackles and asked whether he wanted to pawn "this jewelry," referencing the misconduct in which the accused was facing charges of pawning government computers.

2. While in pretrial confinement, the accused was required to perform various details including yardwork, housekeeping, and filling sandbags for exercises. The post-trial confinees were also required to perform these details. If there were no other duties within the confinement compound, the pretrial confinees performed no other details, while the post-trial confinees were required to perform details around Lackland AFB. As a result, the post-trial confinees were allowed to leave the confinement compound to work as well as to go to the dining facility. The pretrial confinees could not leave the compound for details and had their meals brought to them. At no time prior to trial did the accused or his counsel complain of the accused's treatment while in confinement.

*   *   *

**CONCLUSIONS:**

a.  Pretrial Confinement Credit:  The accused is entitled to credit under United States v. Allen, supra, for the 57 days spent in pretrial confinement.

b.  Conditions in Pretrial Confinement:

1.  Punishment of pretrial confinees may be appropriate to enforce internal discipline. United States v. Palmiter, 20 MJ 90 (CMA 1985).  To ensure discipline within a confinement facility, it is necessary that all confinees understand the rules.  Requiring the accused to yell into the facility windows when he was unable to get the rules right while inprocessing was not unreasonable or inappropriate.  The confinement facility has since ceased this particular measure as ineffective.  The fact that it was ineffective or even ill-advised does not make it violative of Article 13. Requiring the accused to sing a song was also not intended as punishment.  The practice was commonly used to break the tension for new confinees.  That the accused was only required to sing for less than a minute indicates the intent also was not to degrade or humiliate the accused.  The statement made by SSgt Hampton referring to handcuffs as jewelry was also not excessively demeaning or of a punitive nature.  Although it was not professional and indicated poor judgment, it did not so debase the accused as to be a violation of Art 13.

2.  Confinees may be required to perform useful labor because they remain active duty airmen. United States v. Palmiter, supra.  The duties to which the accused was detailed while in pretrial confinement were not punitive or disciplinary in nature.  Washing cars, mowing, painting, cleaning, and filling sandbags may have been menial, but were reasonable and do not constitute pretrial punishment. United States v. Dvonch, 44 MJ 531 (AFCCA 1996).  None of these activities was extraordinary in nature and

all are duties which are routinely required of airmen in the grade of the accused. Further, the accused was not treated as post-trial confinees. When the accused had completed his duties in the confinement facility, his work was done. When the post-trial confinees had no other work in the facility, they were required to perform details outside the confinement compound. That the accused was not allowed to accompany them in the details outside the compound or to dine with the post-trial confinees was also not punitive. To have allowed the accused to accompany the post-trial confinees would have resulted in improper commingling of the prisoners in public. The details and circumstances of the accused's confinement was neither unduly harsh nor punitive and served legitimate government objectives of maintaining discipline, providing duties for active duty airmen, and accomplishing necessary, although menial tasks. That the accused did not complain prior to trial is further evidence that he was not illegally punished. United States v. Washington, 42 MJ 547 (AFCCA 1995).

* * *

3. The administrative disciplinary actions taken against the accused while he was in confinement were appropriate. Commanders are expected to use reprimands and admonitions to further the efficiency of their commands. United States v. Hood, 16 MJ 557 (AFCMR 1983). These administrative tools, used in lieu of court-martial or nonjudicial punishment, are inherently a corrective or administrative function. United States v. Hagy, 12 MJ 739 (AFCMR 1981). These actions were taken to discipline or punish the accused, but not in violation of Art 13. The punishment aspect of the actions was in response to the misconduct alleged in the administrative actions not for the charges already pending before a court-martial. Referral of charges did not convey amnesty or a general pardon to the accused for any misconduct not already charged. The administrative actions were also not a sham intended to improperly influence this court regarding the

accused.  Each action was taken in
response to a specific incident of
misconduct as soon as it became known to
the commander.  There is nothing to
suggest that any of the actions were
rushed through solely to get the
misconduct before the court.  Capt Brauer
properly held the accused responsible for
his actions.  The one incident in which
the commander took action against the
accused was not intended to humiliate the
accused.  Although Capt Brauer's reaction
to the accused's response was emotional
and less than professional, it was an
isolated incident and does not rise to the
level of public humiliation or
denunciation.  United States v. Cruz, 25
MJ 326 (CMA 1987).

**RULING:**  The accused was not subjected to
restriction tantamount to confinement nor
to unlawful pretrial punishment.
Accordingly, the motion for administrative
credit is DENIED.

___ ___ ___

Appellant asserts that his treatment in pretrial confinement
constituted unlawful pretrial punishment, in violation of Article
13, UCMJ.  He particularly notes that he was required to sing "I
Believe I Can Fly" and to run from window to window in the jail
yelling, "I'm an inmate and I'm here because I can't get it
right."  He further complains that he was ridiculed by the
noncommissioned officer in charge of the confinement facility,
stripped of his rank, and made to perform work details with
sentenced prisoners.  The military judge conducted a hearing on
this motion and denied appellant's request for additional credit
against his sentence.  The Court of Criminal Appeals affirmed the
trial judge's ruling and held that Article 13, UCMJ, was not
violated in this case.

Appellant's basic complaint is that he was treated "as a de facto convicted prisoner" and the conditions imposed on him, "when collectively considered constituted illegal punishment." Final Brief at 7, 11.  We disagree.*  Although a pretrial detainee may not be subjected to punishment for the crime for which he is charged, he may be subjected to "discomforting" administrative measures reasonably related to the effective management of the confinement facility.  See Rapier v. Harris, 172 F.3d 999, 1002-03 (7th Cir. 1999).  Moreover, even if these impositions are not reasonable, "'de minimis' impositions on a pretrial detainee" are not cognizable under Article 13, UCMJ. See United States v. Fricke, 53 MJ at 155; United States v. Walsh, 194 F.3d 37, 48 (2nd Cir. 1999) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992))("not . . . every malevolent touch by a prison guard gives rise to a federal cause of action").

Turning to appellant's case, we note that he was a pretrial detainee, and the complained of orientation procedures were routinely applied to all persons being committed to the custody of the confinement facility.  While appellant was no doubt discomforted by this orientation process, he was not publicly humiliated to the extent condemned in United States v. Cruz, 25 MJ 326 (CMA 1987) (public humiliation before 1200 soldiers in

---

* The question whether appellant is entitled to credit for an Article 13 violation is a mixed question of law and fact.  We will not overturn a military judge's findings of fact unless they are clearly erroneous.  We will review de novo the ultimate

battalion formations).  Moreover, even if these orientation procedures were inappropriate for a pretrial detainee, they constituted "'de minimis' impositions on a pretrial detainee for which" administrative credit was not required.  United States v. Fricke, supra; see generally United States v. James, 28 MJ 214, 216 (CMA 1989) (Article 13 standards "conceptually the same as those constitutionally required by the Due Process Clause of the Constitution").

In this regard, we have noted in the past that credit for unlawful pretrial punishment under Article 13, UCMJ, is not warranted each time a penal regulation is violated.  See United States v. McCarthy, 47 MJ 162, 166 (1997).  In the same vein, not all mistreatment of a servicemember awaiting trial requires additional sentence credit under Article 13, UCMJ.  See Cuoco v. Moritsugu, 222 F.3d 99, 109 (2nd Cir. 2000) (rudeness and name-calling do not rise to the level of a constitutional violation); McClanahan v. City of Moberly, 35 F.Supp.2d at 745-46 (applications of force without injury are de minimis impositions); cf. United States v. Walsh, 194 F.3d at 50 (even de minimis uses of force are unconstitutional if they are shocking to the conscience of mankind).  In our view, the singing and shouting out required of appellant and the sarcasm directed at him fell into this legally marginal category.  See Cuoco v. Moritsugu, supra.

---

question whether appellant is entitled to credit for a violation of Article 13.

Appellant also complains that he was stripped of his rank as an Airman (E-2) and forced to refer to himself as an inmate. Such a practice, he asserts, is impermissible with respect to a pretrial detainee, such as himself, who has not yet been tried or convicted and sentenced to such a punishment.  See United States v. Cruz, 25 MJ at 326; see also United States v. Combs, 47 MJ 330, 333 (1997).  The Government disagrees and argues that "requiring inmates to remove their rank for formations with other inmates" was a legitimate penal administrative measure, which was not so onerous as to require administrative credit.  Answer to Final Brief at 10.

"[R]eduction in rank is a well-established punishment, which unlawfully imposed, warrants sentence relief[.]"  See United States v. Combs, supra.  Here, however, there was no testimony establishing a public removal of rank as accomplished in United States v. Cruz, supra.  Moreover, appellant, who testified with respect to his pretrial motion for additional credit, did not testify that his rank insignia was removed or he was prohibited at any time from wearing it.  Finally, as pointed out by the Court of Criminal Appeals, there was conflict in the testimony presented in this case as to whether pretrial detainees in this confinement center were prohibited from wearing their rank.  In these particular circumstances, the military judge was not required to grant additional pretrial confinement credit to appellant.  Cf. United States v. Combs, supra (unrebutted case for sentence relief established).

United States v. Corteguera, Jr., 01-0421/AF

Appellant finally complains that he was "commingled" with post-trial confinees and made to perform the same work as sentenced prisoners. The two-judge court in United States v. Palmiter, 20 MJ 90, 93-96, 98 (CMA 1985), split on the propriety of such a prison practice. We conclude that the mere fact a pretrial detainee and a sentenced prisoner are assigned the same or similar work inside a confinement facility does not per se establish unlawful pretrial punishment under Article 13, UCMJ. It is the nature, purpose, and duration of duties performed by the pretrial detainee which are determinative of their punitive intent. Here, filling sandbags, washing and waxing vehicles, painting red lines, and doing yard work are not acts indicative of punitive intent, nor so onerous under the circumstances of this case as to constitute unlawful pretrial punishment. Although commingling pretrial detainees and convicted prisoners raises different concerns, there is no showing in appellant's case that such commingling even occurred.

Our decision today does not condone the conduct of military prison authorities in this case, nor signal our approval of the prison practices they employed. We note that the record before us suggests the prison authorities themselves have recognized the "stand and yell" program was ineffective and discontinued it. Moreover, as the Supreme Court recently said in a related context, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998); see also United States v. DeStefano, 20 MJ 347, 349 (CMA

11

United States v. Corteguera, Jr., 01-0421/AF

1985); Payne for Hicks v. Churchich, 161 F.3d 1030, 1040-41 (7th Cir. 1998).  In any event, we hold only that the military judge was not required to give additional sentencing credit for the minimally discomforting treatment shown to have been administered by the military prison authorities in this case.  See Cuoco v. Moritsugu, supra at 109.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.