# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SAULSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist CHASTIN L. WALKER**
**United States Army, Appellant**

ARMY 20160239

Headquarters, 82d Airborne Division
Deidra J. Fleming, Military Judge
Colonel Travis L. Rogers, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany M. Chapman, JA; Lieutenant Colonel Christopher D. Carrier, JA; Captain Cody Cheek, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Captain Jeremy Watford, JA (on brief).

22 October 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Senior Judge:

Today we address a claim that the military judge did not grant appellant enough confinement credit for his command's violation of Article 13, 10 U. S. C. § 813 (2012), Uniform Code of Military Justice [UCMJ]. For about eleven and a half months appellant was subject to a no contact order that prohibited him from seeing his step-children while he was investigated, prosecuted, and ultimately convicted of sexually abusing a neighborhood girl.[1] The military judge awarded 58 days confinement credit as an appropriate remedy for the violation. In deciding the

---

[1] A military judge sitting as a general court-martial convicted appellant, contrary to his plea, of the sole offense alleged: sexual abuse of a child in violation of Article 120b, UCMJ, 10 U.S.C. § 920b (2012). The military judge sentenced appellant to a bad-conduct discharge, confinement for nine months, and reduction to the grade of E-1.

claim, we consider the purpose and limitations of providing Article 13, UCMJ, credit. We conclude that no additional relief is warranted.[2]

## BACKGROUND

Appellant has twin stepdaughters. On 28 February 2015, Miss JE, a fourteen year-old girl, was at appellant's house for a sleep over. After the twins had gone to sleep, appellant came down stairs and asked Miss JE if she wanted to cuddle and watch movies with him. He then pulled a blanket over her, and began to rub her lower back, buttocks, and upper leg. Miss JE wanted him to stop and told appellant that she needed to go to sleep. Appellant complied, and then told her not to tell anyone what had happened.

Miss JE called and sent her mother contemporaneous text messages asking her to immediately come and pick her up. Her mother did not answer the phone or see the text messages. The next morning, Miss JE, while stuttering and crying, told her mother what had happened.

---

[2] In a separate assignment of error, appellant asserts the military judge erred by admitting Miss JE's statement to her mother, made the morning after the assault, as an excited utterance. The military judge found that the statement, made less than twelve hours afterwards and made to the first trusted adult Miss JE could disclose to, was still made under the stress of "a startling event." Military Rule of Evidence [Mil. R. Evid.] 803(2). It was therefore admissible as an excited utterance. *Id.* At trial and on appeal, appellant argues that Miss JE's crying resulted from a verbal confrontation with her mother rather than because of appellant's assault. We agree with the military judge's ruling and find the conclusion that Miss JE was still "under the stress of a startling event at the time of [her] statement . . ." to be supported by the record. *United States v. Donaldson*, 58 M.J. 477, 483 (C.A.A.F. 2003).

We also reject appellant's claim he is entitled to sentence relief because it took 309 days to conduct the post-trial processing of appellant's case. We find no due process violation and no prejudice to appellant. *See generally United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Nor do we find that appellant is entitled to any sentencing relief because of the undue delay. *See generally United States v. Tardiff*, 57 M.J. 219, 224 (C.A.A.F. 2002).

Appellant also personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant correctly asserts that the Secretarial designation of the general court-martial convening authority was not included in the record of trial despite the trial counsel's on the record promises to the contrary. We have obtained a copy and placed it in the record. After due consideration, we find the remainder of appellant's *Grostefon* matters do not warrant discussion nor relief.

2

Appellant was interviewed by military law enforcement and wrote a statement that was consistent with Miss JE's accusation. He stated he had become sexually attracted to Miss JE that night after she had given him a hug. When asked if he was sexually aroused while rubbing her back and buttocks appellant responded, "Yep." After the offense was reported, appellant was given a series of no contact orders by his commander. The orders were not well written, and at least two were impossible to comply with. Government counsel at trial described them, if read literally, to be "ludicrous." For example, one order required appellant to remain away from "any residents within 100 miles" of the street where appellant and Miss JE resided. The street was on Fort Bragg. Appellant was assigned to Fort Bragg. We take judicial notice that Fort Bragg is well-less than 100 miles across.

However broadly the orders were written, at trial the military judge properly focused on how the orders were interpreted and enforced. Appellant was not required to stay away from all persons who lived within 100 miles from Miss JE's address. However, the military judge found that the no contact orders (through the various amendments and reissuances) effectively prohibited appellant from having any contact with his stepchildren during the approximately eleven and a half months the offense was investigated and prosecuted. The military judge's finding is reasonable.

At trial, the defense introduced evidence that appellant's children were subjected to a forensic interview. Additionally, police conducted canvas interviews of other neighborhood children. Neither investigatory step revealed additional allegations of abuse.

The defense filed a motion requesting two days of sentencing credit for each day appellant was subjected to the order. The defense claimed that since the police had identified no other allegations of sexual abuse involving children, there was no legitimate government interest behind the order.

The government argued that the order was given in order to protect children from the accused. The government referenced the accused's sworn statement to law enforcement in which the accused admitted to acting on his sexual attraction to a fourteen-year-old girl who was visiting his house for a children's sleep over.

The military judge found no "legitimate government interest" in the no contact order.[3] The military judge made no finding as to whether the order was given with a punitive intent.

---

[3] One of appellant's stepdaughters was called as a government witness. The government did not argue at trial, and we will therefore not consider on appeal,

(continued . . .)

**LAW AND DISCUSSION**

Appellant alleges that the military judge abused her discretion in only awarding 58 days of confinement credit. Appellant argues that the "meager credit awarded in this case was insufficient to communicate that the law applies to the government as well as the accused." Appellant argues, "such an unconscionable abuse of military authority should not withstand appellate review."

In assessing the claim, we briefly consider the purpose and limitations on providing sentencing credit for Article 13, UCMJ violations.

*A. The Limits of Article 13, UCMJ*

Courts-martial (and the Courts of Criminal Appeals) are Article I courts of limited jurisdiction. *See* U.S. Const. art. I, § 8, cl. 14 (granting Congress the power to discipline members of the military); UCMJ, arts. 16-18; *see generally United States v. Ortiz*, 138 S. Ct. 2165, 2170-71 (2018) (describing Congressional authority over military courts to adjudicate charges against service members). The responsibility of administering the military justice system is shared between commanders, staff judge advocates, military judges, and others. While the roles of the various players sometimes overlap, each player has a proper lane. We have previously rejected the view that Article 13, UCMJ, is a broad tool for judicial supervision over alleged abuses of military power, and have instead focused on determining whether the case in front of us is correct in law, correct in fact, and should be approved. UCMJ, art.66(c).

In *United States v. Reinert*, 2008 CCA LEXIS 526 (Army Ct. Crim. App. 7 Aug. 2008) we considered a petition for extraordinary relief filed by the United States against a military judge. The military judge had ordered soldiers who had violated Article 13, UCMJ, be counseled by their brigade commander or command sergeant major. *Id*. at *7. The military judge further ordered that all drill sergeants at the installation receive training on Article 13, UCMJ. *Id*. at *8. When the government failed to follow the military judge's order, the military judge awarded the accused additional confinement credit. *Id*. at *9-10.

We described the judge as "well intentioned" but having far exceeded his authority. *Reinert*, 2008 CCA LEXIS 526, at *38. A military judge's authority is

---

(. . . continued)
whether there was a legitimate government interest in preventing contact between appellant and his stepdaughters as witnesses. *United States v. Carpenter*, 77 M.J. 285, 289 (C.A.A.F. 2018) ("[O]ur review for error is properly based on a military judge's disposition of the motion submitted to him or her . . . .").

limited to the court-martial to which he or she is detailed, and it does not extend to broader policy concerns. *Id.* at \*37-38. While Article 137, UCMJ, specifically requires training on the Uniform Code of Military Justice, to include Article 13, UCMJ, it is not the role of the military judge to direct or supervise training.

Similarly in *United States v. Alston*, 75 M.J. 875 (Army Ct. Crim. App. 2016), we considered the claim that Captain Alston was unlawfully punished pretrial when he was reassigned duties and faced increased supervision while awaiting trial. We found that absent an intent to punish, Article 13, UCMJ, does not provide a mechanism for judicial review of command personnel decisions. *Id.* at 886.

Appellant's argument to this Court could be understood as arguing for sentencing relief that is beyond what is necessary to cure the harm suffered. He stated that "the meager credit awarded in this case was insufficient to communicate that the law applies to the government as well as the accused." In other words, that we might order "extra" sentencing credit in order to punish or deter future government conduct. We do not think that is what appellant means, but if it is, we reject it as being beyond our limited authority. Accordingly, we focus instead on the Article 13, UCMJ, motion as litigated at trial.

### B. *Requirement for Punitive Intent*

Our superior Court, since the very beginning of Article 13, UCMJ, jurisprudence, has required a punitive intent before finding a violation of Article 13. *See, e.g., United States v. Palmiter*, 20 M.J. 90 (C.M.A. 1985).

A requirement that there be an intent to punish as a prerequisite to finding a violation of Article 13, UCMJ, ensures that it is not transmogrified into a means of seeking redress of military grievances generally, and that courts-martial do not become a mechanism for review of command decisions unrelated to military justice. As we stated in *Alston*:

> The Supreme Court of the United States has stated "courts are ill equipped" to review problems regarding prison administration, and that it is not "wise for [a court] to second-guess the expert administrators on matters on which they are better informed." Military judges are likewise disadvantaged when it comes to reviewing a commander's administration of his or her command. Unless there is an intent to punish, Article 13, UCMJ, does not provide for judicial review of command personnel decisions; even in circumstances where appellant asserts the commander's decision was wrong, misguided, or negligent. What Article 13 prohibits

5

> is *extra-judicial* punishment of a person "held for trial." This addition reflects not merely the plain language of Article 13, UCMJ, and its interpretive case law, but also the different duties imposed on a commander and a military judge.

75 M.J. 875, 886 (citations omitted).

Recently, the United States Court of Appeals for the Armed Forces (CAAF) explicitly stated that in order to find a violation of Article 13, UCMJ, "[t]he record *must* disclose an intent to punish on the part of the Government." *Howell v. United States*, 75 M.J. 386, 394 (C.A.A.F. 2016) (emphasis added). "[A] finding of [punitive] intent is a threshold requirement for finding a violation of Article 13, UCMJ." *Alston*, 75 M.J. at 885. Our superior Court has rejected the view that a "punitive effect" without finding a punitive intent is sufficient to support a violation of Article 13, UCMJ. *Howell*, 75 M.J. at 393-94.

When a commander's official action goes wrong, as appellant alleges happened here, there are multiple mechanisms for correction. The chain of command, the Inspector General, and Article 138, UCMJ, are among the means that a soldier may use to seek relief from an oppressive action such as an overly broad or illegal order.[4]

If a finding of punitive intent is required to trigger Article 13, UCMJ, relief, the question then becomes, how does an accused show that the government acted with a punitive intent? Just as with evidence of intent generally, in the absence of direct evidence, evidence of intent can be inferred circumstantially. *Alston*, 75 M.J. at 885. Here, the military judge found the no contact order was not reasonably related to a legitimate government interest.[5] This was not the only possible finding, but it was a reasonable one. This finding allows, but does not require, an inference that the government acted with punitive intent. As the Supreme Court stated in *Bell v. Wolfish*:

---

[4] Not only are these options often the appropriate mechanism for error correction, in the overwhelming instances where there is not a court-martial, they are the only options. Even if Article 13, UCMJ, was construed as a means of imposing judicial supervision of command decisions, it would be a poor one.

[5] We do not address whether the no contact order violated appellant's parental rights. The factual record of appellant as "step-parent" was not sufficiently developed.

> [I]f a particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more, amount
> to "punishment." Conversely, if a restriction or condition
> is not reasonably related to a legitimate goal -- if it is
> arbitrary or purposeless -- a court permissibly may infer
> that the purpose of the governmental action is punishment
> . . . .

441 U.S. 520, 539 (1979).

In other words, the presence or absence of a legitimate governmental objective informs, but does not necessarily answer, the question of whether there is a violation of Article 13, UCMJ. The same official action may violate Article 13, UCMJ, (or not) depending on the motive.

Here, while the military judge found no legitimate government interest at play, she made no finding on whether the no contact orders were issued with punitive intent. If the no contact orders were issued by a commander who was (over-zealously) seeking only to protect children, no Article 13, UCMJ, violation occurred, and any relief from the overbroad order would have to come from a source other than the military judge. But, if the order was issued by a commander who sought to use a no-contact order as a means to exact pretrial punishment on appellant, there would be a clear violation of Article 13, UCMJ.[6]

Evidence was introduced that the government had good cause to believe that: a) the accused had a sexual interest in a child; b) that at the time the accused was acting in loco parentis; and c) the accused acted on his sexual interest. The government then dedicated significant investigatory resources in trying to determine whether appellant had abused other children. On balance, this supports the argument the no contact orders originated from an honest concern about child welfare.

---

[6] Our superior Court has stated that when "an accused fails to complain of the conditions of his pretrial confinement to the military magistrate or his chain of command, that is strong evidence that the accused is not being punished in violation of Article 13." *United States v. Huffman*, 40 M.J. 225, 227 (C.A.A.F. 1994). The initial order was issued on 26 March 2015. On 23 September 2015, the defense counsel sent an email to the trial counsel requesting that the no contact orders be revoked. In response, the government revoked one of the orders, but left the remainder in place. Appellant next complained of the no contact order when he filed the motion for relief under Article 13, UCMJ, on 8 March 2016.

7

On the other hand the no contact orders were not carefully drafted and were not narrowly tailored to achieve their purported purpose. Also, the strength of the government's interest may have waned as the months passed and no new allegations of abuse were discovered. Given the military judge's finding that the orders did not actually serve a legitimate government purpose, it is a permissible inference that the orders were issued with an intent to punish appellant.

We assume, without deciding, that the no contact orders in this case constituted a violation of Article 13, UCMJ.[7] Two prudential concerns guide this determination. First, on appeal the government does not challenge the finding of an Article 13, UCMJ, violation. Although our review under Article 66(c), UCMJ, is not limited to the issues developed and briefed by the parties, the absence of briefing on the issue gives us pause. Second, we cannot reject the possibility the military judge found an intent to punish, but simply failed to put the finding on the record.

Accordingly, we next answer whether appellant received sufficient relief for the Article 13, UCMJ, violation.

### C. What is the appropriate amount of relief?

Appellant claims the military judge abused her discretion by granting him too little confinement credit for the Article 13, UCMJ, violation. "The burden is on appellant to establish entitlement to additional sentence credit because of a violation of Article 13." *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002) (citing Rule for Courts-Martial [R.C.M.] 905(c)(2), *Manual for Courts-Martial, United States* (2000 ed.)).

Providing sentence credit for violations of Article 13, UCMJ, serves to ensure that an accused is not doubly punished for an offense. "[I]f the accused has already been punished pretrial, that pretrial punishment must be credited against the sentence." *Alston*, 75 M.J. at 887 (citing *United States v. Ruppel*, 49 M.J. 247, 254 (C.A.A.F. 1998)).

> Article 13, UCMJ, relief can range from dismissal of the charges, to confinement credit or to the setting aside of a punitive discharge. Where relief is available, meaningful relief must be given for violations of Article 13, UCMJ.

---

[7] Normally, in reviewing claims for Article 13, UCMJ, credit where the military judge makes no finding of an intent to punish, we must review the claim de novo. *United States v. Smith*, 53 M.J. 168, 170 (C.A.A.F. 2000) ("In the absence of a factual finding relating to intent to punish, this Court will address the issue of illegal pretrial punishment de novo. . . .").

> However, relief is not warranted or required where it would be disproportionate to the harm suffered or the nature of the offense.

*United States v. Zarbatany*, 70 M.J. 169, 170 (C.A.A.F. 2011).

The CAAF has described Article 13, UCMJ, credit as "[a] judicially-created remedy, adopted by this Court under our supervisory powers to enforce Article 13, UCMJ." *Ruppel*, 49 M.J. at 254. A sentence credit does not reduce the sentence per se, but rather is a determination that part of the sentence has already been served. *See United States v. Rock*, 52 M.J. 154, 157 (C.A.A.F. 1997); *Ruppel*, 49 M.J. at 254 ("[t]he credit itself is not a reduction of the sentence.") (Effron, J. concurring).

In the case of a de minimus violation of Article 13, UCMJ, it may be that no confinement credit is due. *United States v. Corteguera*, 56 M.J. 330, 334 (C.A.A.F. 2002) (where the pretrial confinee was made to sing "I Believe I Can Fly" and to run from window to window in the jail yelling, "I'm an inmate and I'm here because I can't get it right" constituted "*de minimis*" impositions for which "administrative credit was not required.").

In *United States v. Villamil-Perez*, 32 M.J. 341, 343 (C.M.A. 1991), our superior Court found no relief warranted when a report documenting the accused's alleged offense was posted on a unit bulletin board for three days. While the court found a violation of Article 13, UCMJ, the violation did not amount to material prejudice to a substantial right, *see* Article 59(a), UCMJ, and therefore no relief was warranted.

On the other hand, the CAAF has repeatedly stated that an accused may receive more than day for day credit in the case of serious violations of Article 13, UCMJ. *See United States v. Suzuki*, 14 M.J. 491, 492 (C.M.A. 1983) (condoning three-for-one credit because of "unusually harsh circumstances").

More recently, the CAAF has described the appellate inquiry as follows: "[t]he question of what relief is due to remedy a violation, if any, requires a contextual judgment, rather than the pro forma application of formulaic rules. Whether meaningful relief has been granted and should be granted will depend on factors such as the nature of the Article 13, UCMJ, violations, the harm suffered by the appellant, and whether the relief sought is disproportionate to the harm suffered or in light of the offenses for which the appellant was convicted." *Zarbatany*, 70 M.J. at 176-77 (C.A.A.F. 2011).

We understand this framework as requiring a military judge to, as best he or she can, cure the harm caused by the illegal pretrial punishment while avoiding a

windfall to the accused. The goal is to make the accused whole and prevent double punishment. *Alston*, 75 M.J. at 887 (citing to *Ruppel*, 49 M.J. at 254 (C.A.A.F. 1998)).

Our superior Court has wisely rejected formulaic approaches for determining how much credit is due. But, a non-formulaic inquiry does not suggest there is no framework with which to consider the question. One must start somewhere, and in a case where credit towards confinement is the remedy, one can ask how many days of confinement is roughly equivalent to the illegal punishment inflicted on the accused. The military judge must weigh the harm caused by the Article 13, UCMJ, violation against the remedy sought. While the goal is to seek equipoise, judgment, not math, provides the answer.

In this case, one might ask how many days of confinement should the accused be deemed to already have served in order to balance the harm caused by an order that prohibited him from seeing his stepchildren for over 11 months?

Appellant asked for two days of credit for each day he could not see his stepchildren. The military judge determined that 58 days of confinement credit was an appropriate remedy.

We find the military judge's award of 58 days of confinement credit provided appellant with meaningful relief. We also conclude that the military judge did not abuse her discretion in determining that 58 days was a sufficient remedy.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10