*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, HARRELL, and KORN
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Kirby O. VIAUD**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202400276**

_____

Decided: 31 October 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Derek A. Poteet

Sentence adjudged 5 April 2024 by a general court-martial tried at Marine Corps Base Quantico, Virginia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 300 months, and a dishonorable discharge.[1]

For Appellant:
*Lieutenant Benjamin M. Cook, JAGC, USN*

---

[1] Appellant was credited with 260 days of pretrial confinement.

For Appellee:
*Lieutenant K. Matthew Parker, JAGC, USN*
*Major Mary Claire Finnen, USMC*

Chief Judge DALY delivered the opinion of the Court, in which Senior Judge HARRELL and Judge KORN joined.

_____

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

DALY, Chief Judge:

Appellant was convicted, in accordance with his pleas, of one specification of assault consummated by a battery as a lesser included offense to sexual assault of a child who has attained the age of 12 years, one specification of possession of child pornography, one specification of production of child pornography, and one specification of rape of a child who had not attained the age of 12 years, in violation of Articles 128, 134, and 120b, Uniform Code of Military Justice (UCMJ).[2]

Appellant asserts two assignments of error (AOEs): (1) whether the Government committed a violation of Article 13, UCMJ, when it failed to request civilian law enforcement personnel take down a mugshot of Appellant they had published online while holding him in pretrial confinement at the military's request and (2) whether arbitrarily treating military pretrial confinees in civilian facilities differently from those in military brigs with respect to public-facing mugshots is a denial of equal protection in violation of the Due Process Clause of the Fifth Amendment. We find no prejudicial error and affirm.

## I. BACKGROUND

In accordance with a Memorandum of Understanding (MOU) between the Marine Corps and the Rappahannock Regional Jail (RRJ), a civilian jail in Stafford, Virginia, Appellant's place of pretrial confinement was the RRJ. Rappahannock Regional Jail posted Appellant's mugshot on its public-facing website upon his arrival. The mugshot was a photo of Appellant unshaven, not in uniform, with his full name, and lists "Military-Felony" under the of heading

---

[2] 10 U.S.C. §§ 928, 934, 920b.

"Charges."[3] Trial Defense Counsel (TDC) learned of the mugshot two months after Appellant's arrival at RRJ and requested trial counsel (TC) take action to have the photo removed.[4] After two weeks, the mugshot was still up and TDC requested an update from the Government.[5] Trial counsel responded that there was no update and asked TDC to "cite the regulation you believe imposes restrictions on your client's photo being on the public facing website."[6]

While his mugshot remained online, Appellant entered into a plea agreement.[7] The plea agreement did not include a provision to "waive all waivable motions" and was not a conditional plea in accordance with Rule for Courts-Martial (R.C.M.) 910(a)(2).

Appellant made a pretrial motion for sentencing credit pursuant to Article 13, UCMJ, R.C.M. 304(f), and the Equal Protection Clause of the Fourteenth Amendment based on the online pretrial publication of Appellant's mugshot, requesting 90 additional days of judicially-ordered credit.[8] The military judge ultimately found no violation of Article 13 or equal protection for the online mugshot,[9] and Appellant subsequently pleaded guilty in accordance with his plea agreement.

After findings, the military judge asked TDC if Appellant was punished in any way that would constitute illegal pretrial punishment under Article 13. Before TDC could respond, the military judge added, "[o]ther than what we've already litigated?"[10] Trial Defense Counsel responded in the negative and concurred with the military judge on the credited amount of confinement for Appellant, which did not include any Article 13 credit for the online mugshot. Specifically, there was no colloquy about waiving any motions between the military judge and Appellant because there was no such provision in his plea agreement.

Additional facts necessary to resolve Appellant's AOEs are discussed below.

---

[3] App. Ex. X at 21-22.

[4] App. Ex. X at 3, 45-49.

[5] App. Ex. X at 47-48.

[6] App. Ex. X at 47.

[7] App. Ex. XIV (Plea Agreement).

[8] App. Ex. X at 1.

[9] R. at 120. The military judge did find an Article 13 violation for a medication delivery lapse and awarded 14 days of judicial ordered credit.

[10] R. at 258.

## II. DISCUSSION

**A. Appellant did not waive his Article 13 motion for confinement credit for his online mugshot by subsequently pleading guilty after losing the motion at trial.**

*1. Standard of Review and the Law*

"Whether an appellant has waived an issue is a legal question that this Court reviews de novo."[11]

An unconditional guilty plea generally waives any objection related to the factual question of Appellant's guilt of the charges and specifications.[12] Indeed, the United States Court of Appeals for the Armed Forces (CAAF) has held such a plea "generally 'waives all defects which are neither jurisdictional nor a deprivation of due process of law.'"[13]

Relevant to our analysis is the particular right at stake.[14] Here, Appellant raises a violation of Article 13, which prohibits illegal pretrial punishment and illegal pretrial confinement. Whether a pretrial prisoner is unlawfully punished is both a constitutional and statutory concern.[15] Claims of illegal pretrial punishment are waivable by a plea agreement.[16] But appellate courts, when faced with question of whether an appellant has waived a constitutional right,

---

[11] *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citing *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)).

[12] *United States v. Mooney*, 77 M.J. 252, 254 (C.A.A.F 2018); *see also* R.C.M. 910(j) ("Except [for conditional pleas], a plea of guilty that results in a finding of guilty waives any objection, whether or not previously raised, as to the factual issue of guilt of the offense(s) to which the plea was made and any non-jurisdictional defect as to the offense(s) to which the plea was made that occurred prior to the plea.").

[13] *United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009) (citing *United States v. Rehorn*, 9 C.M.A. 487, 488-89 (1958)).

[14] *United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake."); *see also United States v. Harcrow*, 66 M.J. 154 (C.A.A.F. 2008).

[15] *United States v. McCarthy,* 47 M.J. 162, 164 (C.A.A.F. 1997).

[16] R.C.M. 705 does not specifically prohibit an accused from waiving his right to make a motion for sentencing credit because of unlawful punishment; *see United States v. McFadyen,* 51 M.J. 289 (C.A.A.F. 1999); *United States v. Spykerman,* 81 M.J. 709, 724 (N-M. Ct. Crim. App. 2021).

apply a presumption against finding waiver.[17] The CAAF recently explained in *United States v. Suarez*:

> "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). However, ". . . 'for a waiver to be effective it must be clearly established that there was an intentional relinquishment of a known right or privilege.'"[18]

Importantly, the CAAF has considered violations of Article 13 for the first time on appeal absent affirmative waiver of unlawful pretrial punishment at trial.[19]

*2. Analysis*

After the military judge denied the motion at trial for Article 13 credit, Appellant pleaded guilty pursuant to a plea agreement that he negotiated. The plea agreement did not include a "waive all waivable motions" provision. Such a provision presumably would have prompted the military judge to discuss that term with Appellant to ensure he understood the effect of the term of his plea agreement as required by R.C.M. 910(f)(4).[20] Even when Article 13 waiver is

---

[17] *United States v. Blackburn*, 80 M.J. 205, 209 (C.A.A.F. 2000) (citing *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018)).

[18] __ M.J. __, No. 25-0004/MC, 2025 CAAF LEXIS 651, at *13 (C.A.A.F. Aug. 5, 2025) (quoting *United States v. Smith*, 85 M.J. 283, 287 (C.A.A.F. 2024)).

[19] *United States v. Fricke*, 53 M.J. 149, 154 (C.A.A.F. 2000) (citing *United States v. Huffman*, 40 M.J. 225, 227 (C.M.A. 1994)).

[20] The rule entitled "Plea agreement inquiry," provides that "[t]he military judge shall inquire to ensure: (i) that the accused understands the agreement; and (ii) that the parties agree to the terms of the agreement." R.C.M. 910(f)(4). "If there is doubt about the accused's understanding of any terms in the agreement . . . the military judge should explain those terms to the accused." R.C.M. 910(f)(4) Discussion. The plea agreement inquiry "is part and parcel of the providence of an accuser's plea, and necessary to ensure that an accused is making a fully informed decision as to whether or not to plead guilty." *United States v. Hunter*, 65 M.J. 399, 403 (C.A.A.F. 2008) (citation omitted). "[A]n inquiry that falls short of these requirements and fails to ensure the accused understands the terms of the agreement is error." *Id.* (citation omitted). Thus, the Military Judge's Benchbook advises, "[t]he military judge must discuss each provision in a plea agreement with the accused and ensure that (1) the accused understands the agreement, and (2) the parties agree to the terms of the agreement." Dep't of the Army, Pam. 27-9, *Military Judges' Benchbook*, para. 2-2-8 (Feb. 29, 2020). It also provides that "[s]pecial attention must also be given to terms that purport to waive motions." *Id.*

specifically included in a plea agreement, the CAAF has held, "where a military judge is faced with a pretrial agreement that contains an Article 13 waiver, the judge should inquire into the circumstances of the pretrial confinement and the voluntariness of the waiver, and ensure that the accused understands the remedy to which he would be entitled . . . ."[21] Accordingly, neither case law nor a court-martial rule provides that an unraised claim of illegal pretrial punishment is waived by operation of law.

There is nothing in the record to indicate Appellant understood he was affirmatively giving up his right to Article 13 credit or knew the impact of the denied Article 13 motion on his appeal rights. Appellant's litigated motion and lack of affirmative waiver preserves this issue on appeal.

**B. Appellant's online mugshot was not a violation of Article 13.**

*1. Standard of Review and the Law*

Article 13 provides in part, "[n]o person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement . . . , nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence. . . ."[22]

In *Howell v. United States*, the CAAF restated the necessary inquiry for evaluating whether government action amounts to illegal pretrial punishment:

> [T]he question of whether particular conditions amount to punishment before trial is a matter of intent, which is determined by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective."

> [I]n the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective.[23]

Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reason-

---

[21] *McFadyen*, 51 M.J. at 291.

[22] Article 13, UCMJ, 10 U.S.C. § 813.

[23] *Howell v. United States*, 75 M.J. 386, 393 (alterations in original) (quoting *United States v. Palmiter*, 20 M.J. 90, 95 (C.M.A. 1985)).

ably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon pretrial confinees.[24]

The question of whether Appellant is entitled to credit for an Article 13 violation is reviewed de novo.[25] It is a mixed question of law and fact, and the military judge's findings of fact will not be overturned unless they are clearly erroneous.[26] Appellant bears the burden of proof to establish a violation of Article 13.[27] "Pretrial confinement in a civilian jail is subject to the same scrutiny as confinement in a detention facility operated by the military."[28]

*2. Analysis*

On appeal, Appellant argues his pretrial online mugshot was a violation of Article 13. Appellant's motion at trial[29] described the humiliation Appellant suffered to be on par with or greater than those found to be violations in *United States v. Cruz*[30] and *United States v. Stamper*.[31] Appellant also asserted a disparity with Marines confined at Marine Corps brigs and federal civilian inmates—whose mugshots are not posted online.

The military judge found that the RRJ could commit a violation of Article 13, but did not do so here.[32] The military judge compared and distinguished a case where the government publicly displayed a serious incident report that violated applicable service regulations to Appellant's case where no regulation was violated.[33] Although the military judge inartfully spoke of "policy matters,"

---

[24] *Bell v. Wolfish,* 441 U.S. 520, 538 (1979).

[25] *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002).

[26] *Id.*

[27] *Id.*

[28] *United States v. James*, 28 M.J. 214, 215 (C.M.A. 1989).

[29] App. Ex. X at 7.

[30] *United States v. Cruz*, 25 M.J. 326 (C.M.A. 1987) (An Article 13 violation was found after the accused was called out of a mass formation, called a "criminal" by his commander, and searched and handcuffed in front of his fellow service members).

[31] *United States v. Stamper*, 39 M.J. 1097 (A.C.M.R. 1994) (Article 13 violations found and affirmed for more minor humiliations as well, including a company commander making disparaging remarks to an accused such as "don't go out stealing car stereos this weekend" and "getting any five-finger discounts lately, Stamper?")

[32] R. at 115-16.

[33] R. at 117 (citing *United States v. Villamil-Perez*, 32 M.J. 341 (C.M.A. 1991)).

he cited legitimate reasons why the RRJ may post such mugshots online.[34] Further, the military judge found there was no evidence that the RRJ published the mugshot with the intent to punish Appellant, in fact the RRJ was simply following their internal operation procedures. He concluded that the photograph and accompanying information "appears to be neutral in tone and summary in nature and not summarizing in an exaggerated or derogatory tone, but instead simply summarizing."[35] The military judge concluded that the RRJ had a legitimate reason for the online mugshot based on the evidence.[36] Like in *James*, the military judge decided there was no Article 13 violation, and the complained of condition was rationally related to reasonable operating procedures of the facility and not so "excessive" as to rise to the level of punishment.[37]

The military judge's factual findings were supported by the record and not clearly erroneous. Having conducted a de novo review, we conclude, as did the military judge, that it was not excessive in nature to give rise to an inference of an intent to punish or constitute punishment in and of itself. Our reasoning is the same as the CAAF decided in *United States v. Corteguera*:

> Although a pretrial detainee may not be subjected to punishment for the crime for which he is charged, he may be subjected to "discomforting" administrative measures reasonably related to the effective management of the confinement facility. Moreover, even if these impositions are not reasonable, "de minimis" impositions on a pretrial "detainee" are not cognizable under Article 13, UCMJ.[38]

## C. Appellant's online mugshot did not violate his equal protection due process rights.

### 1. Standard of Review and the Law

We review de novo the question of whether Appellant was denied equal protection of the laws.[39] "The federal government is prohibited from violating a person's due process rights by denying him the equal protection of the

---

[34] R. at 119.

[35] R. at 119.

[36] R. at 118.

[37] *James*, 28 M.J. at 216 (citing *Bell,* 441 U.S. at 539).

[38] 56 M.J. 330, 333 (C.A.A.F. 2002) (citations omitted).

[39] *See United States v. Begani,* 81 M.J. 273, 280 (C.A.A.F. 2021).

laws."[40] Equal protection does not prohibit the government from drawing distinctions among its citizens; it simply requires appropriate justification for any such discrimination.[41] A violation of equal protection occurs when the government discriminates in its treatment of similarly situated individuals or groups.[42] "That is, the Government must treat 'similar persons in a similar manner.'"[43]

The initial question then, is whether military confinees in civilian confinement facilities are similarly situated to military confinees in military facilities, that is, whether they are "in all relevant respects alike."[44]

> "Similarly situated" does not demand they be identical, "but there should be a reasonably close resemblance of facts and circumstances." As there is no precise formula for determining the scope of comparison, courts must rely on their reasoning and judgment when deciding whether groups are similarly situated for equal protection.[45]

When groups are similarly situated, appellate courts apply a "rational basis review" when those similar groups receive "distinct treatment."[46] Under a rational basis review, the government violates equal protection rights only if the "disparate treatment of servicemembers serves no legitimate purpose."[47] The

---

[40] *Id.* at 280.

[41] *See United States v. Gray*, 51 M.J. 1, 22-23 (C.A.A.F. 1999).

[42] *Begani*, 81 M.J. at 280 (citing *Gray*, 51 M.J. at 22).

[43] *Id.*

[44] *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992).

[45] *United States v. Pritchard*, 82 M.J. 686, 692 (Army Ct. Crim. App. 2022) (cleaned up).

[46] *Begani*, 81 M.J. at 280 n.2.

[47] *United States v. Anderson*, 83 M.J. 291, 301 (C.A.A.F. 2023) (citing *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)).

disparate treatment is "accorded a strong presumption of validity" and presumed constitutional.[48] The "burden falls on [a]ppellant to rebut every conceivable basis which might support it."[49] It is a shield against arbitrary classifications by the government.[50]

*2. Analysis*

a. Equal Protection—Appellant is not Similarly Situated to Military Confinees in Military Brigs.

We first turn to Appellant's claim that that he is similarly situated to military confinees in military brigs. Appellant inaccurately relies on the Court of Military Appeals (CMA) decision in *James*.[51] In *James*, the CMA concluded that Article 13, prohibiting pretrial punishment, applies equally to military confinees held in civilian jails.[52] Notably, however, the CMA did not even apply an equal protection analysis. To highlight this distinction, the CMA specifically stated that because the appellant in *James* was treated like every other confinee in the civilian jail, "appellant was not singled out for punishment by the imposition of these conditions. From the record it appears that all persons confined in the jail were subject to the same limitations."[53]

Appellant was held in the RRJ as opposed to a military brig because of logistical and funding considerations.[54] We presume, and Appellant does not question, the authority of the Marine Corps to enter into an MOU with the RRJ to hold military confinees. We acknowledge that confinement facilities will necessarily have different policies, and detainees may be treated differently from facility to facility. That inherently involves differences in the facts and circumstances of their detention, and Appellant and confinees in military brigs are therefore not "in all relevant respects alike."[55] The RRJ's policy to take mugshots did not violate the MOU or Virginia law.[56] Appellant was not treated

---

[48] *Id.*

[49] *Id.* (cleaned up).

[50] *Begani,* 81 M.J. at 280 (citing *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 598 (2008)).

[51] 28 M.J. at 215 (1989).

[52] *Id.*

[53] *Id.* at 216.

[54] R. at 120-21; App. Ex. X at 13-16.

[55] *Nordlinger,* 505 U.S. at 10.

[56] App. Ex. XI.

differently to other confinees in the RRJ, be they military or civilian. We therefore hold that Appellant was not similarly situated with military confinees in military brigs.

> b. Even if Appellant is Similarly Situated to Military Confinees in Military Brigs, there is a Rational Basis for the Distinction.

Even if our inquiry were not otherwise at an end and we were instead to conclude that Appellant and military confinees in military brigs are similarly situated, we would still find no equal protection violation. Appellant has failed to satisfy his burden of demonstrating that the government lacked a rational basis for posting his mugshot. Similar to the plaintiff in *Hensley v. Blount Cty. Jail*,[57] who failed to state a valid equal protection claim when he asserted state county inmates were denied the same medical treatment as federal inmates, Appellant's argument fails because "a mere difference in treatment does not violate the Equal Protection Clause."[58] Instead, to violate the Equal Protection Clause, the separate treatment must be arbitrary.[59]

Specifically, Appellant has failed to demonstrate that the challenged government action—the RRJ publishing his mugshot online—was arbitrary. In fact, the mugshot was RRJ's standard operating procedures for all.[60] We conclude that a rational basis existed for Appellant's confinement at RRJ, and the incidental release of Appellant's mugshot in accordance with the civilian confinement facility's policy was not a violation of Appellant's equal protection rights.

---

[57] *Hensley v. Blount Cty. Jail,* No. 3:15-cv-00019, 2018 U.S. Dist. LEXIS 41874, at *18 (E.D. Tenn. Mar. 14, 2018).

[58] *Id.* (citing *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992)).

[59] *Begani*, 81 M.J. at 280.

[60] App. Ex. X and XI.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[61]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[61] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.