# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 40135 (f rev)

————————————

### UNITED STATES
*Appellee*

v.

### Bradley D. LAMPKINS
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 2 November 2023

————————————

*Military Judge*: Thomas J. Alford; Andrew R. Norton (post-trial processing); Dayle P. Percle (remand).

*Sentence*: Sentence adjudged on 12 August 2020 by GCM convened at Minot Air Force Base, North Dakota. Sentence entered by military judge on 17 November 2020: Dishonorable discharge, confinement for 46 months, reduction to E-1, and a reprimand.

*For Appellant*: Lieutenant Colonel Todd J. Fanniff, USAF; Major Spencer R. Nelson, USAF.

*For Appellee*: Major Morgan R. Christie, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, GRUEN, and KEARLEY, *Appellate Military Judges*.

Judge GRUEN delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

GRUEN, Judge:

This case is before us for a second time. A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of one specification of attempt to steal $9,999.00 (Charge I); two specifications of larceny (Charge II); and 43 specifications of making, drawing, or uttering check, draft, or order without sufficient funds (Charge III), in violation of Articles 80, 121, and 123a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 921, 923a.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 46 months, reduction to the grade of E-1, and a reprimand.[2] Upon recommendation from the military judge, the convening authority suspended all confinement in excess of 24 months for a period of two years and one month from the date of findings, 12 August 2020, at which time the suspended confinement would be remitted without further action unless the suspension was sooner vacated.

Appellant initially raised four issues which we have reworded: (1) whether Appellant is entitled to relief due to a 353-day post-trial processing delay; (2) whether the record of trial was incomplete; (3) whether the military judge abused his discretion in denying Appellant's motion for appropriate relief for illegal pretrial punishment; and (4) whether trial counsel committed prosecutorial misconduct during sentencing argument.

We agreed with Appellant with respect to issue (2). On 25 October 2022, we remanded this case to the Chief Trial Judge, Air Force Trial Judiciary, to correct the record under Rule for Courts-Martial (R.C.M.) 1112(d) to resolve a substantial issue with the post-trial processing, insofar as the military judge's ruling on speedy trial was missing from the record of trial. *United States v. Lampkins*, No. ACM 40135, 2020 CCA LEXIS 500, at *2–3 (A.F. Ct. Crim. App. 25 Oct. 2022) (order).[3] Appellant's record was re-docketed with this court on 9 November 2022 and included the missing ruling. Thus, we find the military judge's correction of the record remedies the error identified in our earlier order.

Subsequent to re-docketing, Appellant submitted three additional issues, which we have reworded and re-numbered: (5) whether the Government's

---

[1] Because Appellant was convicted of conduct spanning between on or about 28 October 2018 and on or about 7 August 2019, references in this opinion to the punitive articles of the UCMJ are to both the *Manual for Courts-Martial, United States* (2016 ed.) and the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). As charges were referred to trial after 1 January 2019, references to the Rules for Courts-Martial and all other UCMJ references are to the 2019 *MCM*.

[2] Appellant was awarded 363 days of pretrial confinement credit against his sentence.

[3] We note an error in the LEXIS cite in that our order was issued on 25 October 2022, but the LEXIS cite incorrectly reflects 2020.

submission of an incomplete record of trial tolls the time period for presumptively unreasonable post-trial delay under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006); (6) whether Appellant is entitled to special relief because the Government engaged in both speedy trial violations and unreasonable post-trial delay; and (7) whether the military judge's analysis of the factors in *Barker v. Wingo*, 407 U.S. 514 (1972), addressing a speedy trial motion fully aligned with that of *United States v. Harrington*, 81 M.J. 184 (C.A.A.F. 2021), *recon. denied,* 81 M.J. 322 (C.A.A.F. 2021)—a case decided after the military judge's ruling at trial.[4]

As to issue (5), we decline Appellant's request to find that over 800 days had elapsed between announcement of the sentence and docketing his case with this court. Here, the record establishes that Appellant's case was docketed at 353 days. We consider the 353-day delay in our discussion of issue (1) below.

We have carefully considered issue (7) and find no discussion or relief is warranted. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356 (C.M.A. 1987)).

With regard to issue (1), for the reasons stated below, we find remedy is appropriate to address the excessive post-trial delay. In our decretal paragraph, we affirm the findings of guilty and only so much of the sentence that should be approved.

# I. BACKGROUND

The charges in this case stem from a number of fraudulent money transactions made by Appellant. Appellant pleaded guilty to all three charges including a total of 46 specifications. In the fall of 2018, Appellant was 19 years old and received a monthly pay of $1,931.10. He arrived at his first duty station on 24 September 2018 and opened a bank account on 27 September 2018 with an initial deposit of $70.00. On 28 October 2018, Appellant wrote the first of many fraudulent checks, this one to the Army and Air Force Exchange Service in the amount of $1,301.75 for the purchase of a computer and card scanner. On 23 February 2019, Appellant stole a Ford F-350 from a Minot, North Dakota, resident, the truck having a value of $23,000.00. In June 2019 he stole $26,800.00 worth of items and services from a local vehicle-related company. Finally, in August 2019, Appellant wrote a check to his wife in the amount of $9,999.00 knowing he did not have the funds in his checking account to cover said check.

---

[4] Appellant personally raises issues (3), (4), and (7) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## II. DISCUSSION

### A. Post-Trial Processing

#### 1. Additional Background

On 10 August 2020, the military judge sentenced Appellant, and on 19 October 2020, the court reporter certified the record of trial "as accurate and complete" in accordance with R.C.M. 1112(b) and R.C.M. 1112(c)(1). Appellant's case was docketed with this court on 30 July 2021—353 days from the date he was sentenced.

On 9 July 2021, trial counsel provided an affidavit and case chronology explaining why it took the Government 353 days to docket Appellant's case with this court.[5] We have corrected the number of days from sentencing to docketing and added information from the record of trial detailing the post-trial processing timeline in this case as set forth below.

| Date | Event | Days after Sentence Announcement |
|---|---|---|
| 9 December 2020 | The base legal office deposited the original and four copies of the record of trial with the Traffic Management Office (TMO) for mail delivery via FedEx. The base legal office then updated the Automated Military Justice Analysis and Management System (AMJAMS) reflecting such action, which caused the case to no longer appear in the open case reports. | 120 |
| 9–11 December 2020 | The TMO lost one copy of the record of trial intended for the Air Force Appellate Records Branch (JAJM), and erroneously mailed the original to Appellant's confinement facility. The TMO mailed Appellant's copy, the remaining copy intended for JAJM, and the remaining copy to the servicing legal office for the general court-martial convening authority at the Numbered Air Force (NAF). | 120–122 |
| 11–18 February 2021 | The NAF received the records of trial and identified missing documents and extensive errors. | 184–191 |

---

[5] Appellant calculated a delay of 352 days—we have calculated a delay of 353 days.

| 6 April 2021 | The NAF returned all the records of trial to the base legal office for correction. | 238 |
|---|---|---|
| 9 April 2021 | The noncommissioned officer in charge (NCOIC) maintained the NAF's copy of the record of trial. The other records of trial were in a sealed box placed inside a cubicle of the case paralegal who already had permanently changed duty stations. | 241 |
| 21 June 2021 | A newly assigned paralegal who began working in the above-mentioned cubicle discovered the box of records of trial in Appellant's case, and gave them to the NCOIC of the military justice section. The NCOIC indicated that processing those copies of the record of trial was no longer time sensitive because *Moreno* had tolled. | 315 |
| 5–6 July 2021 | The NCOIC inspected the records of trial and realized the original record was among them. The NCOIC began correcting the identified errors. | 328–329 |
| 7 July 2021 | The base legal office determined all missing documents had been obtained for inclusion in the record of trial. | 330 |
| 8–9 July 2021 | Another copy of the record of trial was created to replace the one lost in December 2020. The original and three copies were all corrected and provided to TMO for distribution. | 331–332 |
| 30 July 2021 | JAJM received the original record of trial. | 353 |

**2. Law**

As a matter of law, this court reviews whether claims of excessive post-trial delay resulted in a due process[6] violation. *United States v. Anderson*, 82 M.J. 82, 86 (C.A.A.F. 2022). Even if we do not find a due process violation, we may nonetheless grant Appellant relief for excessive post-trial delay under our broad authority to determine sentence appropriateness pursuant Article 66(d), UCMJ, 10 U.S.C. § 866(d). *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002).

---

[6] *See* U.S. CONST. amend. V.

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *Moreno*, 63 M.J. at 135 (citations omitted). The United States Court of Appeals for the Armed Forces (CAAF) in *Moreno* held that a presumptive due process violation occurs under any of the following circumstances: (1) the convening authority takes action more than 120 days after completion of trial; (2) the record of trial is docketed by the service Court of Criminal Appeals (CCA) more than 30 days after the convening authority's action; or (3) a CCA completes appellate review and renders its decision more than 18 months after the case is docketed with the court. *Id.* at 150. As Appellant's case was processed under new procedural rules, we apply the 150-day aggregate standard threshold announced in *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020). When docketing occurs more than 150 days after sentencing, the delay is presumptively unreasonable. "This 150-day threshold appropriately protects an appellant's due process right to timely post-trial and appellate review and is consistent with our superior court's holding in *Moreno*." *Id.*

A case that does not meet the 150-day threshold triggers an analysis of the four non-exclusive factors set forth in *Barker* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (first citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); and then citing *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). Analyzing these factors requires determining which factors favor the Government or an appellant and then balancing these factors. *Moreno*, 63 M.J. at 136. No single factor is dispositive, and the absence of a given factor does not prevent this court from finding a due process violation. *Id.* When examining reasons for the delay this court determines "how much of the delay was under the Government's control" and "assess[es] any legitimate reasons for the delay." *United States v. Anderson*, 82 M.J. 82, 88 (C.A.A.F. 2022).

*Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of a convicted person's grounds for appeal and ability to present a defense at a rehearing. 63 M.J at 138–39 (citations omitted). "The anxiety and concern subfactor involves constitutionally cognizable anxiety that arises from excessive delay," and the CAAF requires "an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Anderson*, 82 M.J. at 87 (quoting *United States v. Toohey*, 63 M.J. 353, 361 (C.A.A.F. 2006)).

Furthermore, Article 66(d), UCMJ, authorizes this court to grant relief for excessive post-trial delay even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. In *Tardif*, the CAAF recognized "a Court of Criminal Appeals has

authority under Article 66[, UCMJ,] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, UCMJ]." *Id.* at 224 (citation omitted). The essential inquiry under *Tardif* is whether, given the post-trial delay, the sentence "remains appropriate[ ] in light of all circumstances." *Toohey*, 63 M.J. at 362 (citing *United States v. Bodkins*, 60 M.J. 322, 324 (C.A.A.F. 2004) (per curiam)).

We provided a further analytical framework for that analysis in *United States v. Gay*, where we set forth a six-factor test to apply before granting "sentence appropriateness" relief under *Tardif* and *Toohey*, even in the absence of a due process violation:

> 1. How long did the delay exceed the standards set forth in *United States v. Moreno,* 63 M.J. 129 (C.A.A.F. 2006)?

> 2. What reasons, if any, has the [G]overnment set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?

> 3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?

> 4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?

> 5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?

> 6. Given the passage of time, can this court provide meaningful relief in this particular situation?

74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd* 75 M.J. 264 (C.A.A.F. 2016).

### 3. Analysis

Appellant contends that he is entitled to relief due to a 353-day post-trial processing delay between the day he was sentenced and the day his record of trial was docketed with this court. Appellant claims that he has suffered particularized anxiety and concern and is therefore prejudiced because of this delay. He further argues that a due process violation has occurred because "the delay adversely affects the public perception of the fairness and integrity of the military justice system." We agree the delay from sentencing to docketing with this court was presumptively unreasonable. While we do not find that the delay prejudiced Appellant, we nevertheless find that relief is appropriate to address the delay.

The Government delay in docketing Appellant's case with this court was 353 days—more than double the 150-day threshold set in *Livak*. Therefore, there is a facially unreasonable delay in post-trial processing. We must now address whether a due process violation has occurred, which requires analysis of the *Barker* factors. The first factor of the *Barker* analysis—the length of the delay—weighs heavily in favor of Appellant. Here, the delay was over 200 days past the 150-day threshold set forth by this court in *Livak*.

The second factor—the reasons for the delay—also weighs in Appellant's favor. The record shows the Government failed on multiple levels during the post-trial processing of the record. Not only did the base legal office responsible for moving the case post-sentencing fail to send the correct copies of the record to the NAF, the NAF took nearly two additional months to identify errors and send the record back to the base legal office for correction. We note a troubling period during post-trial processing wherein for 77 days the record sat untouched, in a cubicle at the base legal office. We find no good reasons were provided to justify delay, and accordingly find that this factor weighs in favor of Appellant.

With respect to the third factor—Appellant's assertion of the right to timely review and appeal—Appellant asserted his right to timely appellate review for the first time in his brief to this court. He asserted this right a second time upon re-docketing. No one factor is dispositive in the *Barker* analysis and the primary responsibility for speedy processing rests with the Government. *Moreno*, 63 M.J. at 136–37. Thus, we find with respect to Appellant's assertion of the right to timely review and appeal, this factor neither weighs in favor nor against Appellant's interests.

The final *Barker* factor addresses prejudice. Appellant asserts he has suffered constitutionally cognizable anxiety from the delay affecting him "physically, mentally, socially, and hindered [his] ability to move on with [his] life." He claims his concern and anxiety is distinguishable from the normal anxiety of an appeal because a medical doctor has diagnosed him with depression and post-traumatic stress disorder. Appellant further claims that the stress and anxiety have increased since he was released from confinement because of the post-trial processing delay. He states the stress and anxiety prevent him from sleeping without medication and he has nightmares given he has not yet had closure with his appeal. Additionally, he claims the lack of finality of his appeal has prevented him from applying for a service characterization upgrade or medical benefits and caused him difficulty in applying for employment. We do not agree with Appellant that his concern and anxiety are distinguishable from the normal concern and anxiety of an appeal and thus, we do not find prejudice. *See Toohey*, 63 M.J. at 361; *see also Anderson,* 82 M.J. at 87 (holding no prejudice for post-trial delay delaying appellant's clemency and parole consideration because prospects of receiving clemency or parole are inherently speculative); *United States v. Bush*, 68 M.J.

96, 101 (C.A.A.F. 2009) (holding no prejudice because appellant's assertion that post-trial delay led to a lost job opportunity were speculative and uncorroborated). We find this factor weighs in favor of the Government.

Where there is no qualifying prejudice from the delay, there is no due process violation unless, "when balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. Here, we find the delays were egregious, not justified, and would adversely affect the public's perception of the fairness and integrity of the military justice system. Again, we note that the overall delay in docketing this case with our court was 353 days, more than double the 150-day standard established in *Livak*. Additionally, we note that we have not been presented with any justification for the delay. Most troubling, though, is the fact that even after this case was over the 150-day standard Appellant's record was left untouched, in a cubicle at the base legal office. Therefore, we find the delay in this case amounted to a due process violation, and that Appellant is entitled to relief. We provide such relief in our decretal paragraph.

Finally, we note that even if we had not found a due process violation, after considering the factors outlined in *Gay,* we would find that Appellant is entitled to *Tardif* relief in the same amount for the excessive post-trial delay. Here, we again are persuaded by the fact that the delay exceeded the standards set forth in *Livak* by over 200 days*;* the general lack of attention by the Government to the overall post-trial processing of this case; the lack of sufficient reasons for the delay; the harm to confidence in the military justice process due to extensive delay; the confidence this court can provide meaningful relief in this particular situation; and the fact that to grant relief is consistent with the dual goals of justice and good order and discipline.

## B. Illegal Pretrial Punishment

### 1. Additional Background

Appellant contends that the military judge abused his discretion when he denied Appellant's motion for appropriate relief for illegal pretrial confinement based on erroneous findings of fact and overlooking important facts. Appellant specifically argues that he is entitled to relief for two reasons: (1) because he was not permitted to go outdoors while in pretrial confinement; and (2) because his restriction to base was tantamount to confinement based on the fact that for 154 days Appellant could not sleep in his own home, put his children to bed, or spend quality time with his wife. We do not find the military judge abused his discretion and find no relief is warranted.

### 2. Law

"The question of whether [an a]ppellant is entitled to credit for an Article 13[, UCMJ,] violation is reviewed de novo." *United States v. Fischer*, 61 M.J. 415, 418

(C.A.A.F. 2005) (citing *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002)). "It is a mixed question of law and fact, and the military judge's findings of fact will not be overturned unless they are clearly erroneous." *Id.* "Appellant bears the burden of proof to establish a violation of Article 13[, UCMJ]." *Id.*

Article 13, UCMJ, provides, "[n]o person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him." Article 13, UCMJ, prohibits two types of actions: (1) the intentional imposition of punishment on an accused prior to trial, i.e., illegal pretrial punishment; and (2) "pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial, i.e., illegal pretrial confinement." *United States v. Inong*, 58 M.J. 460, 463 (C.A.A.F. 2003) (citing *United States v. Fricke*, 53 M.J. 149, 154 (C.A.A.F. 2000) (additional citation omitted)).

The determination of whether pretrial restriction is tantamount to confinement is based on the totality of the conditions imposed by the restriction. *United States v. King*, 58 M.J. 110, 113 (C.A.A.F. 2003) (citation omitted). The CAAF has set forth criteria to consider when determining if pretrial restriction is tantamount to confinement:

> The nature of the restraint (physical or moral), the area or scope of the restraint (confined to post, barracks, room, etc.), the types of duties, if any, performed during the restraint (routine military duties, fatigue duties, etc.), and the degree of privacy enjoyed within the area of restraint. Other important conditions which may significantly affect one or more of these factors are: whether the accused was required to sign in periodically with some supervising authority; whether a charge of quarters or other authority periodically checked to ensure the accused's presence; whether the accused was required to be under armed or unarmed escort; whether and to what degree [the] accused was allowed visitation and telephone privileges; what religious, medical, recreational, educational, or other support facilities were available for the accused's use; the location of the accused's sleeping accommodations; and whether the accused was allowed to retain and use his personal property (including his civilian clothing).

*Id.* (alteration in original) (quoting *United States v. Smith*, 20 M.J. 528, 531–32 (A.C.M.R. 1985), *cited with approval in United States v. Guerrero*, 28 M.J. 223, 225 (C.M.A. 1989)).

### 3. Analysis

Appellant's first claim is based on the military judge's finding that there was a valid, weather-related reason as to why he was denied access outside during

certain periods of his pretrial confinement. Specifically, Appellant claims "the [m]ilitary [j]udge erred in basing his ruling on erroneous facts and a reasoning that a policy of general applicability to all persons in confinement can justify what amounted to punishment." Appellant claims that the military judge made a clearly erroneous finding of fact that the temperatures at Minot Air Force Base, North Dakota, were "well below zero" at times during Appellant's stay in confinement. The military judge was presented with evidence that when the temperature dropped to 32 degrees Fahrenheit, inmates were not allowed outside. The fact that temperatures during the winter in Minot at times were "well below zero" is a finding of fact "through reasonable inferences that the military judge could reach from testimony and other evidence that was presented on the motion." *United States v. Harris*, Misc. Dkt. No. 2020-07, 2021 CCA LEXIS 176, at \*12 (A.F. Ct. Crim. App. 16 Apr. 2021) (unpub. op.).

The military judge stated on the record, "I know it can get cold up here," and received evidence about Appellant's crimes purchasing a snowblower, spread, and ice melt. Using his common knowledge of the local area, combined with logical inferences from the testimony, the military judge could aptly conclude that the temperatures fell "well below zero" at times during Appellant's stay in confinement. This finding is "fairly supported by the record." *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985) (quoting *United States v. Lonberger*, 459 U.S. 422, 432 (1983)). Ultimately, the military judge concluded that there was no evidence that Appellant's confinement conditions "were done for the purposes of punishment, nor is there evidence that those conditions were more rigorous than necessary to ensure [Appellant's] presence at trial." Appellant failed to meet his burden to establish entitlement to credit on this point and we concur with the military judge's finding that there was no intent to punish Appellant when he was denied outside access due to inclement weather.

Appellant's second claim is that the military judge abused his discretion when he found Appellant's 154-day restriction to base was not tantamount to confinement. Appellant's argument is that during this time he could not sleep in his own home, put his children to bed, or spend quality time with his wife.

According to the criteria set forth by the CAAF to consider when determining if pretrial restriction is tantamount to confinement, the only fact Appellant raises that potentially is a consideration is the location of his sleeping accommodations. In this case, while Appellant was not sleeping in his own home during pretrial restriction, there is no indication that his sleeping accommodations alone were somehow tantamount to confinement. The military judge recognized in his ruling denying Appellant's motion that Appellant could not sleep in his own home during this time but noted that Appellant's wife and children were free to visit him. The military judge did not find the conditions Appellant complained of amounted to

pretrial confinement. We agree and find Appellant has not met his burden to establish a violation of Article 13, UCMJ, and is not entitled to relief on this point.

## C. Prosecutorial Misconduct

### 1. Additional Background

Appellant claims that trial counsel invoked the community when calling him a "complete stain" during pre-sentencing proceedings and that this was improper argument under *United States v. Voorhees*, 79 M.J. 5 (C.A.A.F. 2019). As the CAAF reiterated in *Voorhees*, "Disparaging comments are also improper when they are directed to the defendant himself," and "[t]rial counsel's word choice served as 'more of a personal attack on the defendant than a commentary on the evidence.'" *Id.* at 12 (first quoting *United States v. Fletcher*, 62 M.J. 175, 182 (C.A.A.F. 2005); and then quoting *Fletcher*, 62 M.J. at 183). Appellant further claims that trial counsel's comment that he was a "complete stain" is analogous to calling him a "pig" as the trial counsel did in *Voorhees*, which the CAAF said amounted to clear error, *id.* at 7–8, and that this improper argument has negatively affected him. We find any error did not result in material prejudice to a substantial right of Appellant.

### 2. Law

The issue of "[i]mproper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citation omitted). However, if trial defense counsel does not object to a sentencing argument by trial counsel, we review the issue for plain error. *Id.* (citing *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)). To establish plain error, an appellant "must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right." *Id.* at 106 (citing *Erickson*, 65 M.J. at 223). Because "all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Three factors "guide our determination of the prejudicial effect of improper argument: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s].'" *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (alteration in original) (quoting *Fletcher*, 62 M.J. at 184). "In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence

alone." *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (alteration, internal quotation marks, and citation omitted).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248 (internal quotation marks and citation omitted). "During sentencing argument, the trial counsel is at liberty to strike hard, but not foul, blows." *Halpin*, 71 M.J. at 479 (internal quotation marks and citation omitted). "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial." *Baer*, 53 M.J. at 238. "The focus of our inquiry should not be on words in isolation, but on the argument as viewed in context." *Id.* (internal quotation marks and citations omitted).

When analyzing allegations of improper sentencing argument in a judge-alone forum, we presume a "military judge is able to distinguish between proper and improper sentencing arguments." *Erickson*, 65 M.J. at 225.

### 3. Analysis

As there was no objection during trial counsel's sentencing argument, we analyze this issue under a plain error standard of review. We need not determine whether trial counsel's sentencing argument constituted plain and obvious improper argument in this case as we ultimately find that Appellant has failed to demonstrate any material prejudice.

In testing for material prejudice, the first *Fletcher* factor considers the severity of the misconduct. 62 M.J. at 184. On this matter, we note that the "lack of a defense objection is some measure of the minimal impact of a prosecutor's improper comment." *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (internal quotation marks and citation omitted). Here, we find that the comment was minor and relatively insignificant. The comment was not the cornerstone of trial counsel's argument and we note the comment was made one time and did not appear anywhere on counsel's 16 slides used during argument. Ultimately, we find the comment had minimal impact, if any, on Appellant's sentence.

Regarding the second *Fletcher* factor—curative measures taken—no curative instruction was necessary because of the judge-alone forum. We note that military judges are presumed to know and follow the law, absent clear evidence to the contrary. *See United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) (per curiam) (citation omitted); *see also Erickson*, 65 M.J. at 225 (noting the presumption that a military judge is able to distinguish between proper and improper sentencing arguments). Appellant has presented no evidence that the military judge in this case was unable to distinguish between proper and improper sentencing argument.

As to the third *Fletcher* factor—the weight of the evidence supporting the sentence—we find this factor weighs heavily in the Government's favor. The evidence

in this case was strong and uncontested, as it came from Appellant's own admissions to the military judge during his guilty plea inquiry. Appellant admitted to attempting to steal $9,999.00, larceny, and 43 specifications of making, drawing, or uttering checks without sufficient funds. The military judge sentenced Appellant to a dishonorable discharge, confinement for 46 months, reduction to the grade of E-1, and a reprimand. The 46 months' confinement is significantly less than Appellant's maximum exposure. As noted *supra*, we further reduce Appellant's sentence for unreasonable delay in this case.

In conclusion, we find that Appellant has failed to meet his burden to demonstrate that any error resulted in material prejudice to a substantial right. After considering trial counsel's comments as a whole, we are confident that Appellant was sentenced based on the evidence alone. *See Halpin*, 71 M.J. at 480.

## D. Appellate Review

This review is specific to the processing time starting when Appellant's case was first docketed with this court, as we have already addressed sentencing to docketing with this court *supra*. Subsequent to re-docketing, Appellant requested this court find he is entitled to special relief when there is both a speedy trial violation and unreasonable post-trial delay during the appellate process to address the effect of those two errors in combination. Appellant concedes "this is a question of first impression" and cites no law to support special relief in such circumstances, nor does he define special relief under these circumstances. We decline to make a finding on the effect of the combined delays and address the delay in appellate processing below.

### 1. Additional Background

Appellant's record of trial was originally docketed with this court on 30 July 2021. Appellant requested and was granted eight enlargements of time to file his assignments of error, over the Government's opposition, extending the deadline to file his brief until 25 June 2022.

On 24 June 2022, Appellant filed his brief setting forth issues with this court. In his brief, issue (2) asks whether the record of trial is incomplete because it is missing the military judge's ruling on one of the two legal issues the defense counsel specifically preserved for appellate review. Specifically, the record was missing the military judge's ruling on the Defense Motion for Speedy Trial. While the Government argued Appellant's requested remedy for correction was unwarranted, they acknowledged the record did not include the subject ruling. On 25 October 2022, this court remanded the record for correction, directing that the record be returned to the court not later than 14 November 2022 for completion of appellate review. *Lampkins*, order at *500 (*see* n.3 *supra*).

The corrected record was re-docketed with this court on 9 November 2022. Thereafter, on 9 January 2023, Appellant filed an additional brief with three

additional issues. On 8 February 2023, the Government filed their answer to Appellant's brief. On 31 January 2023, Appellant filed a Motion for Leave to File Demand for Speedy Appellate Review arguing that 30 January 2023 was the 18-month deadline for this court to issue a decision, thus triggering *Moreno's* presumption of facially unreasonable delay. The Government did not oppose. On 9 February 2023 we granted Appellant's motion by treating such motion as a "demand for speedy appellate review." On 15 February 2023, Appellant filed a Motion for Leave to File a Supplemental Assignment of Error pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which we denied on 24 February 2023.

### 2. Law

We review de novo an appellant's entitlement to relief for post-trial delay. *Livak*, 80 M.J. at 633 (citing *Moreno*, 63 M.J. at 135).

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *Moreno*, 63 M.J. at 135 (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals." *Id.* at 142.

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker,* 407 U.S. at 530: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted).

Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

### 3. Analysis

Over 18 months have elapsed since Appellant's record of trial was originally docketed with this court. Assuming for purposes of our analysis that the October 2022 remand and November 2022 re-docketing of the record did not "reset" the *Moreno* timeline, there is a facially unreasonable delay in the appellate proceedings. In light of this assumption, we have considered the *Barker* factors and find no violation of Appellant's due process rights. Although Appellant asserted in a declaration attached to the record that the delay in his appeal negatively affected

him physically, mentally, socially, and hindered his ability to move on with his life, we have found his arguments uncompelling. We have found no material prejudice to Appellant's substantial rights stemming from the appellate process. We find his confinement has not been "oppressive" for purposes of our *Moreno* analysis. Furthermore, we find appellate review processing has not been so egregious as to adversely affect the perception of the military justice system.

The timeline in appellate processing is largely attributable to Appellant's requests for enlargements of time and additional filings. After this court re-docketed his case, Appellant was afforded the opportunity to submit additional issues, which he did on 9 January 2023. Before the Government had an opportunity to respond to Appellant's brief, on 31 January 2023, Appellant filed a Motion for Leave to File Demand for Speedy Appellate Review. On 8 February 2023, the Government filed their response to Appellant's brief. On 15 February 2023, Appellant motioned to supplement his two earlier briefs requesting this court accept an additional issue pursuant to *Grostefon*. This court denied that motion. Accordingly, we find no violation of Appellant's due process rights.

Furthermore, recognizing our authority under Article 66(d), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. After considering the factors enumerated in *Gay*, 74 M.J. at 742, we conclude that with respect to appellate review, no such relief is warranted.

### III. CONCLUSION

We affirm only so much of the sentence that includes 46 months' confinement, a bad-conduct discharge, reduction to the grade of E-1, and a reprimand. The findings as entered, and the sentence as modified, are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings as entered and the sentence, as modified, are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court